**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

WILLIE E. DENNIS,

                Plaintiff,

        v.

K&L GATES LLP, DAVID TANG,
JAMES SEGERDAHL,
JEFFREY MALETTA, MICHAEL CACCESE,
ANNETTE BECKER, PALLAVI WAHI,
JOHN BICKS, and CHARLES TEA.

                Defendants.

-------------------------------------------------------------X

Civil Action No.:

**COMPLAINT**
**<u>Jury Trial Demanded</u>**

       Plaintiff, WILLIE E. DENNIS ("Plaintiff"), appearing pro se, brings this lawsuit

against Defendants K&L GATES LLP ("K&L GATES" or "the Firm"), DAVID TANG

("Tang"), JAMES SEGERDAHL ("Segerdahl"), JEFFREY MALETTA ("Maletta"),

MICHAEL CACCESE ("Caccese"), ANNETTE BECKER ("Becker"), PALLAVI

WAHI ("Wahi"), JOHN BICKS ("Bicks"), and CHARLES TEA ("Tea"), (collectively,

the "Individual Defendants" and together with K&L GATES, the "Defendants"), and

hereby alleges the following:

<u>**NATURE OF THE ACTION**</u>

       1.     Plaintiff was employed by the Firm as an attorney for seventeen (17) years

and was improperly terminated in bad faith, and contrary to the Firm's partnership

agreement, in retaliation for his simply raising concerns that the Firm was discriminating

against Plaintiff on the basis of his race and in retaliation for his merely raising concerns

that the Firm was discriminating against its members and employees on the basis of

gender and race and allowing its members to sexually harass the Firm's members and employees.

2.       Plaintiff proceeds pursuant to 42 U.S. Code § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et seq., as amended ("Title VII"), the New York State Human Rights Law, N.Y. Executive Law §§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, Administrative Code §§ 8-101 *et seq.* ("NYCHRL").

3.       As set forth below, Plaintiff, an African American attorney, was a member of K&L GATES in the New York office for 17 years. He was the victim of systemic racism and discriminatory barriers to equal treatment, which were widely known to exist within the global law firm of K&L GATES and which has included the unlawful denial of bonuses, compensation commensurate with fellow White partners, and fairness with respect to the terms and conditions of his employment.

4.       The Firm was under intense scrutiny from legal publications such as Law.com due to allegations of a culture of sexual misconduct (See https://www.law.com/thelegalintelligencer/2018/12/12/at-kl-GATES-women-alleged-misconduct-and-left-as-accused-partners-stayed-on/). When Plaintiff attempted to discuss the issue with certain partners of the Firm to mitigate the damage and create a better sexual harassment process internally, K&L GATES and a small group of leaders (i.e., the Individual Defendants) subjected Plaintiff to unlawful retaliation, including reducing his compensation and violating the Firm's partnership agreement by expelling him from the Firm. The Firm terminated his employment after Plaintiff repeatedly demanded that his fellow White partners refrain from discriminating against African American lawyers and from sexually harassing women lawyers including law student summer interns.

5.      The Firm also created a racially hostile work environment that was severe and/or pervasive.

6.      Plaintiff repeatedly complained internally to Firm Management about all of the allegations above. When Firm partners and associates learned of the Individual Defendants' conduct, they did not honor their ethical and legal obligations to bring the discrimination, hostile work environment, and retaliation to an end.

7.      As a result of Plaintiff's race and protected activity of complaints about discrimination, harassment and retaliation, the Individual Defendants, who were well aware and knowledgeable of this, subjected Plaintiff to materially adverse employment actions.

8.      Defendants progressively increased the pressure on him, and added to the harms and losses being suffered by Plaintiff by continuing to diminish the terms and conditions of his employment (including compensation) compared to his White partner counterparts, and ultimately terminated him.

## JURISDICTION AND VENUE

9.      This action involves federal questions regarding the deprivation of Plaintiff's rights under Section 1981 and Title VII of the Civil Rights Act. This Court has original jurisdiction over Plaintiff's Section 1981 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4). The Court has original jurisdiction over Plaintiff's Title VII claims pursuant to those two provisions as well as 42 U.S.C. §2000e-5(f)(3). Furthermore, the Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local laws pursuant to 28 U.S.C. § 1367(a).

10.     Pursuant to 28 U.S.C. § 1391(c) and 42 U.S.C. §2000-5(f)(3), venue is proper in this district because a substantial part of the events or omissions giving rise to this action, including the unlawful discriminatory and unlawful retaliatory practices alleged herein, occurred in this district.  Additionally, the relevant employment records were maintained, in whole or in part, at K&L GATES's offices located in this district, which employs over 100 attorneys.

11.     Plaintiff timely filed a formal complaint with the U.S. Equal Employment Opportunity Commission (EEOC) on March 3, 2020. The EEOC issued a right to sue letter dated August 10, 2020. Plaintiff has filed this action within 90 days of the date of his receipt thereof.

**PARTIES**

**PLAINTIFF**

12.     Plaintiff is a resident of New York, New York and is an African American attorney licensed to practice in the States of New York, New Jersey, and the District of Columbia.

13.     Plaintiff was employed by K&L GATES for seventeen (17) years as a partner in the New York Office located at 599 Lexington Avenue, New York, New York 10022.  At all relevant times, Plaintiff was employed by, associated with and/or a member/partner of the Firm and met the definition of an "employee" under all applicable statutes.

**DEFENDANTS**

14.     Defendant K&L GATES is a global law firm with over 1,800 lawyers and 45 offices worldwide. Defendant generated over $1 billion in revenues in 2019. The Firm

has a principal place of business at 599 Lexington Avenue, New York, New York, 10022.
At all relevant times, Defendant K&L GATES has met the definition of an "employer"
under all applicable statutes.

15.     Defendant Tang is a resident of Seattle, Washington and at all times
relevant herein served, and continues to date to serve as a Member of the Executive
Committee and Managing Partner of the Asia Offices of K&L GATES. At all relevant
times, Defendant Tang directly participated in the discriminatory, retaliatory, and
otherwise unlawful employment decisions and actions taken against Plaintiff and was a
"covered employer" and/or "aider" or "abettor" under all relevant statutes.

16.     Defendant Segerdahl is a resident of Pittsburgh, Pennsylvania and at all
times relevant herein served, and continues to date to serve as the Global Managing
Partner of K&L GATES. At all relevant times, Defendant Segerdahl directly participated
in the discriminatory, retaliatory, and otherwise unlawful employment decisions and
actions taken against Plaintiff and was a "covered employer" and/or "aider" or "abettor"
under all relevant statutes.

17.     Defendant Maletta is a resident of Washington, D.C. and at all times
relevant herein served, and continues to date to serve as the General Counsel of K&L
GATES.  At all relevant times, Defendant Maletta directly participated in the
discriminatory, retaliatory, and otherwise unlawful employment decisions and actions
taken against Plaintiff and was a "covered employer" and/or "aider" or "abettor" under
all relevant statutes.

18.     Defendant Caccese is a resident of Boston, Massachusetts and at all times
relevant herein served, and continues to date to serve as the Chairman and Practice Area

Leader Asset Management and Investment Funds.  At all relevant times, Defendant Caccese directly participated in the discriminatory, retaliatory, and otherwise unlawful employment decisions and actions taken against Plaintiff and was a "covered employer" and/or "aider" or "abettor" under all relevant statutes.

19.     Defendant Becker is a resident of Seattle, Washington and at all times relevant herein served, and continues to date to serve as a Partner and Practice Area Leader Corporate. At all relevant times, Defendant Becker directly participated in the discriminatory, retaliatory, and otherwise unlawful employment decisions and actions taken against Plaintiff and was a "covered employer" and/or "aider" or "abettor" under all relevant statutes.

20.     Defendant Wahi is a resident of Seattle, Washington and at all times relevant herein served, and continues to date to serve as the Co-Managing Partner of the United States; Managing Partner in the Seattle office; Chair of the Firm-wide Diversity Committee; and Co-Chair of the Firm-wide India practice. At all relevant times, Defendant Wahi directly participated in the discriminatory, retaliatory, and otherwise unlawful employment decisions and actions taken against Plaintiff and was a "covered employer" and/or "aider" or "abettor" under all relevant statutes.

21.     Defendant Bicks is a resident of New York, New York and at all times relevant herein served, and continues to date to serve as the Managing Partner in the New York Office. At all relevant times, Defendant Bicks directly participated in the discriminatory, retaliatory, and otherwise unlawful employment decisions and actions taken against Plaintiff and was a "covered employer" and/or "aider" or "abettor" under all relevant statutes.

6

22.     Defendant Tea is a resident of Pittsburgh, Pennsylvania and at all times relevant herein served, and continues to date to serve as a Partner and serves as the Deputy General Counsel of the Firm. At all relevant times, Defendant Tea directly participated in the discriminatory, retaliatory, and otherwise unlawful employment decisions and actions taken against Plaintiff and was a "covered employer" and/or "aider" or "abettor" under all relevant statutes.

## FACTUAL ALLEGATIONS

**EXAMPLES OF THE SYSTEMIC RACISM THAT PERMEATED AT K&L GATES TO CREATE A RACIALLY HOSTILE WORK ENVIRONMENT TOWARDS AFRICAN AMERICAN ATTORNEYS INCLUDING THE PLAINTIFF**

23. At all relevant times, systemic racism permeated at K&L GATES, creating unlawful discriminatory barriers to equal treatment, which resulted in the widespread and constant loss of opportunities for African American lawyers as well as the Plaintiff.

24. Though K&L GATES held itself out as a leader of diversity by supporting minority-focused legal bar organizations such as the National Bar Association, the Minority Corporate Counsel Association, and Corporate Counsel Women of Color, internally K&L GATES practiced systemic racism and sexism.

25. At the Firm, African American attorneys faced minimal career opportunities, limited training and development opportunities, a denial of access to substantive and high-profile legal work, and significant roadblocks to partnership.

26. In terms of compensation, African American lawyers employed by the Firm as associates are paid less compensation than their White counterparts.

27. African American partners are compensated significantly less by the Firm than the compensation paid to White partners due to race.

28. African American partners are regularly denied origination credit.

29. The Firm has failed to provide equal opportunity for African American lawyers, especially in terms of salary, bonuses, training, development, access to clients, and billable hours.

30. The Firm has not been able to retain African American attorneys because of its discriminatory culture. Within a short period of time after arrival at the Firm, highly-qualified African American lawyers have departed:

- John Doe 1 (African American)

- John Doe 2 (African American)

- John Doe 3 (African American)

- John Doe 4 (African American)

- John Doe 5 (African American)

- Jane Doe 1 (African American)

- Jane Doe 2 (African American)

- Jane Doe 3 (African American)

- Jane Doe 4 (African American)

- Jane Doe 5 (African American)

- Jane Doe 6 (African American)

- Jane Doe 7 (African American)

- Jane Doe 8 (African American)

- Jane Doe 9 (African American)

- Jane Doe 10 (African American)

- Jane Doe 11 (African American)

- Jane Doe 12 (African American)

- Jane Doe 13 (African American)

31. In response to each and every departure, Plaintiff would complain internally to Firm Management and the Individual Defendants about the departure of African American attorneys. Plaintiff expressed his concern about the unfair treatment experienced by African American lawyers with respect to opportunities for advancement compared to White attorneys.

32. Though the public explanation offered by the Firm for each departure was "they left for better opportunities," in fact the Firm did not foster an equitable work environment for these African Americans.

33. When Plaintiff continually raised concerns about this high attrition rate of African American attorneys, Firm Management would repeatedly respond to Plaintiff by saying:

   a. *"African American lawyers cannot handle Big Law"*;

   b. *"African American lawyers are not ready to work at AMLAW 250 Firms"*;

   c. *"Black lawyers don't have what it takes to succeed at K&L GATES"*;

   d. *"Black lawyers cannot bring big clients to the Firm"*;

   e. *"Black lawyers don't fit in"*;

   f. *"Black lawyers can't cut the mustard and their legal skills are substandard"*;

   g. *"African American lawyers are not our preference for our clients…We prefer White and Asian lawyers to be staffed on our clients' matters"*; and

h. "***Black partners are not expected to be good lawyers. We need them to make it rain.***"

34. Each year, Plaintiff was subjected to these racist responses and racist sentiments. Plaintiff was also subjected to a hostile work environment and suffered mental pain and anguish.

35. Since Defendant Caccese became the Chairman of the Firm in 2017, he has systemically "counseled out" African American partners and ended the tenure of the only African American partner on the Executive Management Team.

36. Currently, there are no African Americans on the Executive Committee.

37. The African American partner who served on the Executive Management Committee was removed from the Executive Committee in 2017.

38. Jane Doe 1, who is African American, graduated from Harvard Law School, speaks six languages, and the daughter of a civil rights leader and icon, was the Firm's former Chief Diversity Officer. Defendant Caccese forced Jane Doe 1 out of the Firm in 2019, without any explanation.

39. John Doe 1 was the first and only African American partner in the Firm's largest office, Seattle.  He was forced out of the Firm in 2005. There has not been another African American partner in the Seattle office since 2005.

40. With respect to compensation, the Firm has different standards for Black and White attorneys. The Firm hired White lateral partners, like Defendant Bicks, who never met any of the financial representations he made to the Firm prior to joining. Yet, the Firm still promoted these partners into senior management positions and provided them with compensation significantly above that of African American partners.

African American partners who met their commitments and brought in new business, were not given full origination credit or promoted to senior management positions.

41. As a result of discriminatory hiring practices as well as discriminatory promotion practices, in 2020, the Seattle, Pittsburgh, and Boston offices, three of the largest offices of K&L GATES, do not have a single African American male partner. The Boston and Pittsburgh offices do not have a single African American partner. The Firm hides this by listing some African American partners, such as John Doe 7, who resides in New Jersey, in two different offices (New York and Pittsburgh).

42. As a result of discriminatory hiring practices as well as discriminatory promotion practices, the Boston office, where the Chairman of K&L GATES is based and controls the hiring and staffing, has never had an African American male partner. The Chairman of the Firm is attempting to make the rest of the Firm look like the Boston office.

43. As a result of discriminatory hiring practices as well as discriminatory promotion practices, K&L GATES has only one African American partner in the State of California. K&L GATES has offices in Los Angeles, San Francisco, Palo Alto and Orange County. It is expected that the only African American partner of K&L GATES in California will retire in 2021.

**PLAINTIFF'S INVOLVEMENT IN THE AFRICAN AMERICAN COMMUNITY AND AWARDS**

44.     Plaintiff, who is an African American, is a graduate of Columbia Law School, Columbia College, and Choate Rosemary Hall.

45.     Plaintiff is licensed to practice law in New York, New Jersey, and the District of Columbia.

46.     Plaintiff has practiced corporate law for over 30 years in New York City working at AMLAW 250 law firms and representing Fortune 500 companies including Microsoft, Goldman Sachs, DuPont, MetLife, CBRE, American Express, Tyco, Toys-R-Us, and Darden Restaurants.

47.     Shaped by his background and experience, Plaintiff has always supported gender and racial diversity including:

- Supporting national organizations with diversity and inclusion missions for minority lawyers including the Minority Corporate Counsel Association, the National Bar Association, and Corporate Counsel Women of Color.

- Serving on the Board of Directors of the Upper Manhattan Empowerment Zone for eight years, working closely with the Honorable Charles Rangel—a former, extraordinarily long-serving Congressman, civil rights leader, and the "dean" of New York's Congressional delegation for many years.

- Sitting on the Board of Directors for Junior Achievement of New York.

- Counseling numerous political figures and participating in the presidential campaigns of former President Barack Obama in 2008 and 2012, former United States Secretary of State Hillary Clinton in 2016, and President-Elect Joe Biden in 2020.

48. Plaintiff has received numerous awards related to his legal and philanthropic efforts. He was named by *Black Enterprise* magazine as one of the nation's best lawyers and by *Savoy* magazine as one of the top African American lawyers in America.

## PLAINTIFF'S EMPLOYMENT AT K&L GATES LLP

49.     Plaintiff worked at prestigious AMLAW 250 law firms including Akin
Gump Strauss Hauer & Feld LLP and Thelen Reid and Priest. Plaintiff had a multi-
million-dollar book of business, which was developed over the years through Plaintiff's
hard work, board of directors and community work, and relationships in the minority
community and with diversity bar associations.

50.     Plaintiff was recruited by K&L GATES and joined the Firm in 2005,
where he joined its corporate group as a partner.

51.     When Plaintiff joined K&L GATES's New York Office in 2005, he
entered into a partnership agreement with the Firm.

52.     In addition to the agreement, the Firm's policy enumerated terms for
compensation and remuneration around origination credit for clients Plaintiff and others
brought to the Firm.  Per the policy, the partner who establishes the initial client
relationship determines the allocations of credit and compensation for the following
categories:

- *Origination Credit*: Principal client contact partner. Notably, compensation is
  higher for origination credit.

- *Responsible Matter Credit*: Partners performing the work for the client.

- *Billing and Inventory Credit*: Partner responsible for billing and collecting fees
  for the client.

53.     With respect to many clients, Plaintiff, due to his race, was denied the
opportunity to participate in the allocation process or was instructed by K&L GATES as
to what the allocation would be without explanation or opportunity for input or appeal.

13

54.     K&L GATES recruited Plaintiff, in part, because of the decades of goodwill Plaintiff built in the African American community, which K&L GATES believed would provide the opportunity to develop new clients for the Firm.

55.     Also, the Firm was aware of Plaintiff's long-standing advocacy for both fairness in gender and racial diversity. K&L GATES believed this would enhance the Firm's brand and market position.

56.     Plaintiff nevertheless was subjected to mistreatment for promoting diversity and fairness at the Firm.

57.     K&L GATES recruited Plaintiff to gain access to his business contacts, clients, and associations, with no intention of keeping the gender and diversity commitments made to Plaintiff.

58.     The Firm used Plaintiff's client contacts and market penetration arising from his support for gender, orientation, and racial diversity, to divert the fees Plaintiff brought to the Firm to solely benefit White partners.

59.     Plaintiff complained internally about the failure of K&L GATES to use fees and work generated by Plaintiff to promote diversity and gender equality within the Firm. Plaintiff also complained about discrimination, harassment, and retaliation.

60.     Plaintiff's concerns intensified over a period of three years beginning in 2017, during which Plaintiff expressed to the Defendants including the Firm's Chair, Executive Committee, Diversity Committee, Chief Diversity Officer, and numerous individual partners concerns about the Firm's indifference, and in some cases hostility towards African American attorneys.

61.     Specifically, Plaintiff expressed that the Firm was discriminating against him in his compensation, denial of origination credit, and access to office services and support staff. Also, Plaintiff was aware that some of the White partners with the same tenure, experience, and less client revenues were paid more than Plaintiff.

62.     In addition, Plaintiff complained to Firm Management and the Individual Defendants that the Firm was failing to adhere to its own equal employment opportunity policy as well as federal, state, and local prohibitions against racial discrimination.

63.     Plaintiff further complained that the Firm's African American revolving door and poor diversity record were hurting the Firm's brand and hampering its ability to create and maintain quality client relationships.

64.     Plaintiff experienced retaliation after bringing these discriminatory practices to the attention of the Firm's management.

65.     To combat the Firm's racism and poor diversity record, Plaintiff took the initiative to spearhead many diversity efforts to foster change and, while his advocacy was well received externally and supported by groups that are typically marginalized in the legal profession and workplace setting as well as some of the Firm's most elite clients, it was ill received by the Firm.

66.     At all times, Plaintiff satisfactorily performed the requirements imposed upon him by the partnership agreement including partnership capital contributions.

67.     However, and despite Plaintiff's performance, K&L GATES continuously discriminated and retaliated against Plaintiff and breached the partnership agreement by interfering with his client relationships and also by failing to compensate him in his base pay and bonus pay per the agreed upon terms of the Firm's compensation policy.

68.     On May 13, 2019, Plaintiff was wrongfully terminated because of his race and in retaliation for his protected activity (*i.e.,* (i) internal complaints about discrimination, harassment, and retaliation Plaintiff was subjected to; (ii) internal complaints about K&L GATES's discrimination against other African American lawyers; and (iii) internal complaints about the mistreatment of women at the Firm who were being sexually harassed by senior management.

69.     Even though Plaintiff is no longer at K&L GATES, the clients he brought to the Firm remain clients of the Firm. Hence, K&L GATES's White attorneys continue to be unjustly enriched by clients that Plaintiff brought into the Firm who continue to generate multi-million dollars in revenue every year.

### a. PLAINTIFF IS DENIED ORIGINATION CREDIT

70.     One of Plaintiff's main clients while at K&L GATES was Microsoft.

71.     Although Plaintiff expanded the Firm's relationship with Microsoft, an iconic global company and brand, on the strength of his close personal relationships with Microsoft's President and Chief Legal Officer, and a senior Microsoft lawyer who is African American, Plaintiff was cheated out of and denied full origination credit during his employment at K&L GATES.

72.     K&L GATES breached Plaintiff's partnership agreement and its policy of crediting firm partners such as the Plaintiff for introducing new clients and matters to the Firm. For example, even though Microsoft was Plaintiff's client, he was never given origination credit or compensation for the business revenues generated from Microsoft's legal work. He was also denied origination credit for bringing PepsiCo and Starbucks in as clients of the Firm as well.

73.     Plaintiff, who was qualified, performed and met his obligations.

74.     K&L GATES repeatedly breached Plaintiff's partnership agreement and its policy, by not allowing Plaintiff origination credit.

75.     The practice of denying Plaintiff origination credit continued over a 17-year period, with credits diverted to White partners without notice or explanation, which drastically reduced his compensation from that of an equity partner to a junior associate causing Plaintiff lost wages and harm.

76.     All of K&L GATES's actions have caused Plaintiff mental anguish.

77.     The practice of denying African American partners origination credit at K&L GATES was institutionalized.

78.     White partners, who were Plaintiff's counterparts such as Defendant Bicks, were allocated origination credit, which they had not earned.

***b. PLAINTIFF AND AFRICAN AMERICAN ATTORNEYS ARE DISCRIMINATED AGAINST IN MICROSOFT MATTERS***

79.     In addition, the Firm, discriminated against Plaintiff and other African American partners and associate attorneys by interfering with and preventing Plaintiff and those attorneys from working on new Microsoft matters that were originated. This practice by K&L GATES intentionally kept the compensation of African American attorneys lower than White attorneys at the Firm. As a result, many African American attorneys left the firm "voluntarily," rather than K&L GATES's having to discharge them.

80.     Of particular importance, African American attorneys were denied opportunities to work on Microsoft matters. These African American lawyers at K&L GATES who were excluded and denied opportunities include:

- Jane Doe 1 (African American)

- Jane Doe 2 (African American)

- Jane Doe 3 (African American)

- Jane Doe 14 (African American)

- John Doe 6 (African American)

- John Doe 7 (African American)

81. When Plaintiff questioned K&L GATES and the Individual Defendants as to why and for the reason, they were denying him and other African American attorneys from servicing Microsoft, Plaintiff was told by Firm Management that even though Microsoft requested the participation of African American attorneys on its matters, **"Black lawyers don't fit in, and Asian lawyers are preferred."**

82. Plaintiff found this response and all the others to be unacceptable, blatantly racist, and against the federal, state and local laws.

83. All of Plaintiff's internal complaints of racism and discrimination went ignored and uncorrected.

   a. This racism against African American lawyers is one of the reasons why Jane Doe 1, former Head of Diversity, left the Firm less than 60 days after Plaintiff was pushed out.

   b. This racism against African American lawyers is one of the reasons why Jane Doe 2 (Partner) left the Firm this year (2020).

   c. This racism against African American lawyers is one of the reasons why Jane Doe 3 (Partner) left the Firm at the end of 2019.

84. Defendants took yet further action against Plaintiff in reprisal for his complaints, including, but not limited to barring Plaintiff's access to work on Microsoft matters and failing to include him in client strategy phone calls, meetings, staffing reports, strategy sessions, and origination credit.

85. When Plaintiff requested Defendants Caccese, Segerdahl, and Zanic meet with the African American Microsoft lead relationship attorney, who is based on the East Coast (New York and Washington, D.C.), all three who are White, refused and said that the African American Microsoft relationship attorney should fly across country to Seattle to meet with Defendant Becker.

86. Defendant Becker, who is a White partner at the Firm became the point person on all Microsoft matters.

87. Defendant Becker repeatedly told Plaintiff, ***"White associates understand the Microsoft contracts better than the Black attorneys."***

88. The Firm barred the African American attorneys and Plaintiff from meeting with the African American Microsoft lead relationship attorney.

89. Plaintiff was incensed that the Individual Defendants refused to meet with the in-house lead, who is African American. Plaintiff raised concerns that they were treating the African American lead attorney differently than White in-house leads.

90. When Plaintiff pressed the matter and voiced more concerns about the Firm losing the Microsoft business, the Firm's leadership team threatened Plaintiff with reduced compensation if he did not cease such conversations. These threats yet furthered a hostile work environment and caused Plaintiff mental anguish.

91. Shortly thereafter, Defendant Bicks assaulted Plaintiff in the hallway near the elevator. Defendant Bicks pushed Plaintiff, yelled at him, and spit in his face. This conduct was threatening, offensive, intimidating, and abusive.

92. The Firm punished Plaintiff by reducing his compensation.

*c. PLAINTIFF IS REMOVED AS POINT PERSON FOR CORPORATE COUNSEL WOMEN OF COLOR AND BUSINESS GENERATION IS GIVEN TO NON-AFRICAN AMERICAN PARTNER WHO DIVERTED CONTACTS TO WHITE PARTNERS*

93. Another overt act of discrimination related to the relationship Plaintiff brought to the Firm with diversity-focused bar association, Corporate Counsel Women of Color ("CCWC").

94. Through Plaintiff, the Firm's brand was significantly enhanced as the elite title sponsor of CCWC's annual conference for 14 years. For over a decade, the Firm's affiliation with CCWC and the exposure the Firm gained at CCWC's annual conference brought the Firm multi-million dollars in revenues by connecting the Firm with prominent in-house decision-making lawyers who awarded business to law firms that valued and championed diversity.

95. The Firm interfered with Plaintiff's business relationship with CCWC by barring Plaintiff from participating internally in the strategic development of the relationships that Plaintiff had created and had brought to the Firm.

96. Each year, Plaintiff would request to be included and was denied.

97. The Firm's removal of Plaintiff as CCWC's point person because of his race, and denial of this opportunity because of his race, in essence hindered his ability to develop new Clients throughout the year and at the annual conference with Fortune 1000 and Forbes 2000 legal departments.

98. Instead, Plaintiff was replaced by Defendant Wahi, a South Asian partner, as the point person for the CCWC conference. When Plaintiff complained to Defendant Wahi, she responded, "**Black lawyer diversity is not what the Firm is interested in. The Firm is interested in Asian diversity.**"

99. Defendant Wahi became the diversity "face" of the Firm at the CCWC annual event. Defendant Wahi would collect all the contacts at the conference for business generation and then funnel all those contacts back to White partners.

100.    Defendant Wahi and others made multi-million dollars from this practice, while Plaintiff was completely shut out and undercompensated.

101.    For successfully directing business contacts from CCWC to White partners, the Firm promoted Defendant Wahi to Co-Managing Partner of the US Offices and appointed her to the Executive Management Committee.

102.    Defendant Wahi's appointment to the Executive Management Committee would cost the only African American on the Executive Management Committee, John Doe 6, his seat. John Doe 6 was removed from the Executive Management Committee because of his race (John Doe 6 was the only African American partner on the Executive Management Committee).

103.    Since the Firm replaced John Doe 6 with Defendant Wahi, there have been no African Americans on the Executive Management Committee.

*d. PLAINTIFF IS EXPELLED*
*AFTER PLAINTIFF ENGAGED IN PROTECTED ACTIVITY OF ADVOCATING FOR AFRICAN*
*AMERICAN LAWYERS AND WOMEN ATTORNEYS WHO HAD BEEN SEXUALLY HARASSED BY*
*MANAGEMENT*

104.     Some of the Firm's discriminatory practices were publicly exposed in 2018, when

the plight of several women who were sexually harassed by partners with power at

the Firm was raised in the national internet publication Law.com on December 12,

2018. See *At K&L Gates, Women Alleged Misconduct Left, as Accused Partners*

*Stayed On* (Law.com, December 12, 2018)

([https://www.law.com/thelegalintelligencer/2018/12/12/at-kl-GATES-women-](https://www.law.com/thelegalintelligencer/2018/12/12/at-kl-GATES-women-)

[alleged-misconduct-and-left-as-accused-partners-stayed-on/](https://www.law.com/thelegalintelligencer/2018/12/12/at-kl-GATES-women-alleged-misconduct-and-left-as-accused-partners-stayed-on/)). This article brought the

Firm negative attention.

105.     It was known Firm-wide that some of the male partners on the Executive

Management Committee would "date" women lawyers in the Firm and then make

determinations about their compensation.

106.     In response to the December 12, 2018 article, on December 20, 2018, Plaintiff

sent over 300 partners in the Firm, which included Firm Management, the Head of

Diversity, and the members of the Management Committee, and others an email

addressing the issue.

107.     Plaintiff suggested new policies and procedures for preventing similar behavior in

the future. As a result of this e-mail, the Executive Management Committee began

more aggressive and retaliatory actions against Plaintiff.

108.     Shortly thereafter, on January 30, 2019, Plaintiff was notified that the Firm was

barring his access to the office and suspending his access to emails and secretarial

services.

109.     In doing so, Defendants also breached Section 6.03 of the K&L GATES, LLP

Amendment to and Restatement of Partnership Agreement, effective as of January 1,

2013, and as amended effective May 16, 2016, which provides a process to expel a partner that requires a vote by the partnership, after a recommendation is made by the Management Committee.

110.   The Firm's action on January 30, 2019 constituted a de facto expulsion in violation of Section 6.03.

111.   Defendants further violated the process by proposing financial incentives designed to facilitate Plaintiff's "overall separation from the Firm," including that he "withdraw" as a partner. This action circumvented the Management Committee recommendation and vote of the partnership.

112.   The reason the Firm gave Plaintiff for his expulsion (*i.e.,* that he was involved in a divorce proceeding), was pretextual.

113.   No White partners who had gone through divorce proceedings have been expelled. To the contrary, even White partners who have engaged in serious misconduct (e.g., spousal abuse; drunk driving; substance abuse; etc.) have not been expelled, or even disciplined by the Firm.

114.   Plaintiff, an African American, was indeed the first partner ever in the history of the Firm to be expelled from K&L GATES.

115.   The Firm never provided Plaintiff an opportunity to present a full record, defense, or any other process or opportunity to be heard.

116.   The Firm refused to advise how the vote was conducted, if it was conducted, and who had voted to expel him.

117.   Every aspect of Plaintiff's expulsion was inconsistent with the Firm's partnership agreement.

118.    This cited reason by the Firm and inconsistent application to White partners who have engaged in egregious conduct merely highlights the discriminatory nature of the Firm's actions.

119.    Plaintiff engaged in protected activity. The Individual Defendants and K&L GATES LLP were aware of the protected activity. As a result of race discrimination and retaliation, shortly thereafter, on May 19, 2019, the Firm took a materially adverse employment action against Plaintiff in an unprecedented step to expel Plaintiff from the Firm.

120.    Plaintiff was officially terminated on May 19, 2019.

### e. K&L GATES WEAPONIZES RACE AND HARASSES PLAINTIFF WITH PRIVATE INVESTIGATORS AND ON AND OFF DUTY POLICE OFFICERS AFTER HIS TERMINATION

121.    The retaliation and harassment did not stop on Plaintiff's termination date.

122.    The Firm has embarked on a campaign of intimidating Plaintiff.

123.    After improperly and unlawfully expelling Plaintiff, Defendants engaged third-party armed individuals to follow Plaintiff to yet further intimidate and bully him, including at a conference of Black attorneys in Chicago in September 2019 at the Chicago Marriott Downtown Magnificent Mile.

124.    On the orders of the Firm and the Individual Defendants, the private investigators and on and off duty police officers have harassed Plaintiff and his family.

125.    Said individuals have frequently appeared at Plaintiff's home, brandished their weapons, and otherwise caused Plaintiff and his family significant and severe mental anguish and emotional distress.

126.    The Firm's unlawful conduct and intimidation tactics are ongoing.

127.    To protect himself and his family, Plaintiff has filed complaints against the Firm

with the District Attorney's Office for the City of New York, the New York City

Policy Department, and the Chicago Marriott Downtown Magnificent Mile. However,

as of the date of this filing, Defendants threats and tactics of intimidation continue.

### FIRST CAUSE OF ACTION
### (Race Discrimination in Violation of Section 1981)
### (Against All Defendants)

128.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

129.    By the actions described above, among others, Defendants have discriminated

against Plaintiff on the basis of his race in violation of Section 1981. Defendants have

treated Plaintiff less favorably than White employees by denying him the same terms

and conditions of employment available to employees who are White, including, but

not limited to, subjecting him to a hostile work environment, and disparate working

conditions, and denying him the terms and conditions of employment equal to those

of the employees who are White.

130.    As a direct and proximate result of Defendants' discriminatory conduct,

Plaintiff suffered and will continue to suffer monetary and/or economic harm, including,

but not limited to, loss of future income, compensation, and benefits for which he is

entitled to an award of damages.

131.    As a direct and proximate cause of Defendants' discriminatory conduct,

Plaintiff also suffered extreme mental anguish, depression, severe disruption of his

personal and emotional life, and loss of enjoyment in the ordinary pleasures of everyday

life.

132.     As a result of Defendants' violation of Section 1981, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

133.     Moreover, Defendants' unlawful and discriminatory actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under Section 1981 for which Plaintiff is entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendants' unlawful employment practices.

134.     Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
### (Retaliation in Violation of Section 1981)
### (Against All Defendants)

135.     Plaintiff realleges and incorporates by reference the foregoing paragraphs.

136.     By the actions described above, among others, Defendants retaliated against Plaintiff for making protected complaints regarding discrimination by denying him compensation, breaching his partnership agreement, and expelling him shortly after Plaintiff engaged in protected activity by complaining of unfair treatment.

137.     As a direct and proximate result of Defendants' retaliatory conduct in violation of Section 1981, Plaintiff has suffered, and will continue to suffer, harm and pecuniary losses for which he is entitled to an award of compensatory damages.

138.    As a direct and proximate cause of Defendants' retaliatory conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and loss of enjoyment in the ordinary pleasures of everyday life.

139.    As a result of Defendants' violation of Section 1981, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

140.    Moreover, Defendants' unlawful and discriminatory actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under Section 1981 for which Plaintiff is entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendants' unlawful employment practices.

141.    Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(Race Discrimination in Violation of Title VII)**
**(Against K&L Gates)**

142.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

143.    By the actions described above, among others, Defendant K&L GATES has discriminated against Plaintiff on the basis of his race in violation of Title VII.

144.    Defendant K&L GATES has treated Plaintiff less favorably than White employees by denying him the same terms and conditions of employment available to employees who are White, including, but not limited to, subjecting him to a hostile work environment, and disparate working conditions and denying him the terms and conditions of employment equal to that of the employees who are White.

145.    As a direct and proximate result of Defendant K&L GATES's discriminatory conduct, Plaintiff suffered and will continue to suffer monetary and/or economic harm, including, but not limited to, loss of future income, compensation, and benefits for which he is entitled to an award of damages.

146.    As a direct and proximate cause of Defendant K&L GATES's discriminatory conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and loss of enjoyment in the ordinary pleasures of everyday life.

147.    As a result of Defendant K&L GATES's violation of Title VII, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

148.    Moreover, Defendant K&L GATES's unlawful and discriminatory actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under Title VII for which Plaintiff is entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendant K&L GATES's unlawful employment practices.

149.   Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII)
### (Against K&L Gates)

150.   Plaintiff realleges and incorporates by reference the foregoing paragraphs.

151.   By the actions described above, among others, Defendant K&L GATES retaliated against Plaintiff for making protected complaints regarding discrimination by denying him compensation, breaching his partnership agreement, and expelling him shortly after Plaintiff engaged in protected activity by complaining of unfair treatment.

152.   As a direct and proximate result of Defendant K&L GATES's retaliatory conduct in violation of Title VII, Plaintiff has suffered, and will continue to suffer, harm and pecuniary losses for which he is entitled to an award of compensatory damages.

153.   As a direct and proximate cause of Defendant K&L GATES's retaliatory conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and loss of enjoyment in the ordinary pleasures of everyday life.

154.   As a result of Defendant K&L GATES's violation of Title VII, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

155.   Moreover, Defendant K&L GATES's unlawful and discriminatory actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under Title VII for which Plaintiff is

entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendant K&L GATES's unlawful employment practices.

156.    Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL)**
**(Against K&L Gates)**

157.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

158.    Defendant K&L GATES has discriminated against Plaintiff on the basis of his race in violation of the NYSHRL by denying him the same terms and conditions of employment available to employees who are White, including, but not limited to, subjecting him to disparate working conditions and compensation, and ultimately terminating Plaintiff's employment.

159.    As a direct and proximate result of Defendant K&L GATES's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and will continue to suffer monetary and/or economic harm for which he is entitled to an award of damages.

160.    As a direct and proximate cause of Defendant K&L GATES's discriminatory conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and loss of enjoyment in the ordinary pleasures of everyday life.

161.    As a result of Defendant K&L GATES's violation of the NYSHRL, Plaintiff has been damaged in an amount to be determined at trial but not less than Five

Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

162.    Moreover, Defendant K&L GATES's unlawful and discriminatory actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendant K&L GATES's unlawful employment practices.

163.    Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

<h3 style="text-align:center"><u>SIXTH CAUSE OF ACTION</u><br>(Retaliation in Violation of the NYSHRL)<br>(Against K&L Gates)</h3>

164.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

165.    By the actions described above, among others, Defendant K&L GATES has retaliated against Plaintiff on the basis of his protected activities in violation of NYSHRL by, *inter alia*, ignoring his protected complaints about the discriminatory treatment of non-White employees, by subjecting him to increased scrutiny and harassment and ultimately terminating his employment.

166.    As a direct and proximate result of Defendant K&L GATES's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and will continue to suffer monetary and/or economic harm for which he is entitled to an award of damages.

167.    As a direct and proximate cause of Defendant K&L GATES's retaliatory conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and loss of enjoyment in the ordinary pleasures of everyday life.

168.    As a result of Defendant K&L GATES's violation of the NYSHRL, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

169.    Moreover, Defendant K&L GATES's unlawful and retaliatory actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendant K&L GATES's unlawful employment practices.

170.    Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION
**(Aiding and Abetting Discrimination and Retaliation in Violation of the NYSHRL)**
**(Against the Individual Defendants)**

171.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

172.    The NYSHRL provides that it shall be an unlawful discriminatory practice "[f] or any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

173.    By the actions described above, among others, the Individual Defendants engaged in an unlawful discriminatory and retaliatory practice in violation of NYSHRL by aiding, abetting, inciting, compelling, and coercing the unlawful discrimination by Defendant K&L GATES in violation of the NYSHRL.

174.    By the actions described above, among others, the Individual Defendants engaged in an unlawful and retaliatory practice in violation of NYSHRL by aiding, abetting, inciting, compelling, and coercing the unlawful retaliation in violation of the NYSHRL.

175.    As a direct and proximate result of the Individual Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and will continue to suffer monetary and/or economic harm for which he is entitled to an award of damages.

176.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and of enjoyment in the ordinary pleasures of everyday life.

177.    As a result of Defendants' violation of the NYSHRL, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

178.    Moreover, Defendants' unlawful actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under the NYSHRL for which Plaintiff is entitled to an award of punitive

damages in the amount of Five Million Dollars ($5,000,000) to punish and deter

continuation of Defendants' unlawful employment practices.

179.    Plaintiff is further entitled to pre-judgment interest on all monies awarded,

as well as reasonable attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYCHRL)**
**(Against K&L Gates)**

180.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

181.    Defendant K&L GATES has discriminated against Plaintiff on the basis of his

race in violation of the NYCHRL by denying him the same terms and conditions of

employment available to employees who are White, including, but not limited to,

subjecting him to disparate working conditions and compensation, and ultimately

terminating Plaintiff's employment.

182.    As a direct and proximate result of Defendant K&L GATES's unlawful

and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and will

continue to suffer monetary and/or economic harm for which he is entitled to an award of

damages.

183.    As a direct and proximate cause of Defendant K&L GATES's

discriminatory conduct, Plaintiff also suffered extreme mental anguish, depression,

severe disruption of his personal and emotional life, and of enjoyment in the ordinary

pleasures of everyday life.

184.    As a result of Defendant K&L GATES's violation of the NYCHRL,

Plaintiff has been damaged in an amount to be determined at trial but not less than Five

Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

185.     Moreover, Defendant K&L GATES's unlawful and discriminatory actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendant K&L GATES's unlawful employment practices.

186.     Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

### NINTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
**(Against K&L Gates)**

187.     Plaintiff realleges and incorporates by reference the foregoing paragraphs.

188.     By the actions described above, among others, Defendant K&L GATES has retaliated against Plaintiff on the basis of his protected activities in violation of NYCHRL by, *inter alia*, ignoring his protected complaints about the discriminatory treatment of non-White employees, by subjecting him to increased scrutiny and harassment and ultimately terminating his employment.

189.     As a direct and proximate result of Defendant K&L GATES's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and will continue to suffer monetary and/or economic harm for which he is entitled to an award of damages.

190.    As a direct and proximate cause of Defendant K&L GATES's retaliatory conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and of enjoyment in the ordinary pleasures of everyday life.

191.    As a result of Defendant K&L GATES's violation of the NYCHRL, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

192.    Moreover, Defendant K&L GATES's unlawful and retaliatory actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendant K&L GATES's unlawful employment practices.

193.    Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

**TENTH CAUSE OF ACTION**
**(Aiding and Abetting Discrimination and Retaliation in Violation of the NYCHRL)**
**(Against the Individual Defendants)**

194.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

195.    By the actions described above, among others, the Individual Defendants engaged in an unlawful discriminatory and retaliatory practice in violation of NYCHRL by aiding, abetting, inciting, compelling, and coercing the unlawful discrimination in violation of the NYSHRL.

196.    As a direct and proximate result of the Individual Defendants' unlawful discriminatory and retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered and will continue to suffer monetary and/or economic harm for which he is entitled to an award of damages.

197.    As a direct and proximate result of the Individual Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered and will continue to suffer monetary and/or economic harm for which he is entitled to an award of damages.

198.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and of enjoyment in the ordinary pleasures of everyday life.

199.    As a result of Defendants' violation of the NYCHRL, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

200.    Moreover, Defendants' unlawful actions were intentional, and done with malice and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff and his rights under the NYCHRL for which Plaintiff is entitled to an award of punitive damages in the amount of Five Million Dollars ($5,000,000) to punish and deter continuation of Defendants' unlawful employment practices.

201.    Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

**ELEVENTH CAUSE OF ACTION**
**(Negligent Hiring, Training, Retention and Supervision)**
**(As Against K&L GATES)**

202.     Plaintiff realleges and incorporates by reference the foregoing paragraphs.

203.     As a result of Plaintiff's complaints, Defendant K&L GATES knew or should have known by the exercise of diligence and reasonable care of the racially based hostile work environment and discrimination perpetuated by Defendant K&L GATES's management employees.

204.     Defendant K&L GATES failed to properly select, train and supervise its managers such that incidents of discrimination, retaliation, harassment, hostile work environment, are properly investigated and promptly prevented and/or corrected.

205.     As a direct and proximate result of Defendant K&L GATES's negligent conduct, Plaintiff has suffered and will continue to suffer monetary and/or economic harm for which he is entitled to an award of damages.

206.     As a direct and proximate cause of Defendant K&L GATES's negligent conduct, Plaintiff also suffered extreme mental anguish, depression, severe disruption of his personal and emotional life, and of enjoyment in the ordinary pleasures of everyday life.

207.     As a result of Defendants' negligent conduct, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

208.     As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for

compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

### TWELFTH CAUSE OF ACTION
#### (For Breach of Contract)
#### (As Against K&L Gates)

209.   Plaintiff realleges and incorporates by reference the foregoing paragraphs.

210.   Plaintiff entered into a partnership agreement in 2005 in the County of New York, State of New York with Defendant K&L GATES.

211.   At all times, the plaintiff performed all conditions, covenants, and promises required by him on his part to be performed in accordance with the terms and conditions of the partnership agreement and K&L GATES's policies.

212.   Throughout Plaintiff's tenure, Defendant K&L GATES continuously breached the said partnership agreement by failing to fulfill its obligations thereunder.

213.   Among other things, Defendant K&L GATES failed to provide Plaintiff with full compensation credit for clients he brought to the Firm and failed to pay Plaintiff origination credit and compensation per the partnership agreement.

214.   As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000).

215.    Plaintiff is further entitled to pre-judgment interest on all monies awarded, as well as reasonable attorneys' fees and costs.

## THIRTEENTH CAUSE OF ACTION
### (Tortious Interference with Contract/Prospective Economic Advantage)
### (As Against Defendants Becker, Segerdahl, and Wahi)

216.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

217.    A valid agreement existed between Plaintiff and K&L GATES.

218.    Defendants Becker, Sergerdahl, and Wahi were well aware of the existence of the

agreement between Plaintiff and K&L GATES.

219.    Defendants Becker, Sergerdahl, and Wahi intentionally induced the breach of the

contract by interfering with Plaintiff and by taking steps to effectuate the breach

without justification.

220.    The agreement was breached.

221.    As a result of the foregoing, Plaintiff has been damaged in an amount to be

determined at trial but not less than Five Million Dollars ($5,000,000).

## FOURTEENTH CAUSE OF ACTION
### (Unjust Enrichment)
### (As Against All Defendants)

222.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

223.    Defendants have been substantially and materially enriched by Plaintiff's efforts,

contacts, associations, affiliations, and work.

224.    The Firm, to this date, continues to reap the benefits of Plaintiff's efforts,

contacts, associations, affiliations, and work.

225.    Plaintiff has contributed years of his own personal finances that have helped to

enrich Defendants.

226.   It is against equity and good conscience to permit Defendants to retain the benefit of Plaintiff's efforts, contacts, associations, affiliations, and work without properly and fully compensating Plaintiff therefor.

227.    As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000).

## FIFTEENTH CAUSE OF ACTION
### (Quantum Meruit)
### (Against K&L GATES)

228.   Plaintiff realleges and incorporates by reference the foregoing paragraphs.

229.   Plaintiff performed services for K&L GATES in good faith including bringing clients to the Firm and helping to generate revenues for K&L GATES.

230.   K&L GATES accepted the services performed and rendered by Plaintiff.

231.   Plaintiff expected to be compensated for his services performed, especially as it related to receiving annual compensation increases, bonuses, and origination credit.

232.   Plaintiff was not properly and fully compensated for his services performed.

233.   As a result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000).

## SIXTEENTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### (As Against All Defendants)

234.   Plaintiff realleges and incorporates by reference the foregoing paragraphs.

235.   By the actions described above, among others, Defendants engaged in extreme and outrageous conduct.

236.    Among other things, Defendant Bicks engaged in extreme and outrageous conduct.

237.    The Firm and the Individual Defendants sending private investigators and on and off duty police officers after Plaintiff and his family is extreme and outrageous conduct.

238.    This conduct by Defendants was intended to cause Plaintiff mental anguish and severe emotional distress.

239.    As a direct and proximate cause of Defendants' conduct, Plaintiff suffered extreme mental anguish including severe emotional distress, depression, severe disruption of his personal and emotional life, and of enjoyment in the ordinary pleasures of everyday life.

240.    As a result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

241.    Plaintiff is further entitled to reasonable attorneys' fees and costs.

### SEVENTEENTH CAUSE OF ACTION
**(Negligent Infliction of Emotional Distress)**
**(As Against All Defendants)**

242.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

243.    Defendants owed Plaintiff, as their employee, a duty of care.

244.    Defendants, by the actions described above, breached their duty to Plaintiff.

245.    This conduct by Defendants was intended to cause Plaintiff mental anguish and severe emotional distress.

246.     As a direct and proximate cause of Defendants' conduct, Plaintiff suffered extreme mental anguish including severe emotional distress, depression, severe disruption of his personal and emotional life, and of enjoyment in the ordinary pleasures of everyday life.

247.     As a result of Defendants' conduct, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000) for compensatory damages, emotional distress, adverse effects on his career, and diminished earning capacity.

248.     Plaintiff is further entitled to reasonable attorneys' fees and costs.

## EIGHTEENTH CAUSE OF ACTION
### (Fraud)
### (As K&L Gates)

249.     Plaintiff realleges and incorporates by reference the foregoing paragraphs.

250.     K&L GATES made statements.

251.     K&L GATES's statements were false.

252.     K&L GATES had scienter to deceive Plaintiff.

253.     Plaintiff relied on the statements made by K&L GATES.

254.     As a result of the foregoing and Plaintiff's reliance on Defendant K&L GATES's false statements, Plaintiff has been damaged in an amount to be determined at trial but not less than Five Million Dollars ($5,000,000).

## NINETEENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)
### (As K&L Gates)

255.     Plaintiff realleges and incorporates by reference the foregoing paragraphs.

256.     A fiduciary relationship existed between Plaintiff and Defendant K&L GATES.

257.   Defendant K&L GATES engaged in misconduct.

258.   As a result of the foregoing and Defendant K&L GATES's misconduct, Plaintiff

has been damaged in an amount to be determined at trial but not less than Five

Million Dollars ($5,000,000).

## TWENTIETH CAUSE OF ACTION
### (Accounting)
### (As K&L Gates)

259.    Plaintiff realleges and incorporates by reference the foregoing paragraphs.

260.   A fiduciary relationship existed between Plaintiff and Defendant K&L GATES.

261.   Defendant K&L GATES engaged in misconduct and breached the fiduciary

relationship.

262.   As a result of the foregoing and Defendant K&L GATES's misconduct and

breach of the fiduciary relationship, Plaintiff has been damaged.

263.   Plaintiff requires an accounting from K&L GATES.

264.   Plaintiff has the right to inspect K&L GATE's books and records.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff prays that the Court grant the following relief:

(a) Enjoin Defendants from: (i) subjecting employees to discrimination and

harassment including a hostile work environment based on race; and (ii)

retaliating against employees who engage in activity protected under Section

1981, Title VII, the New York State Human Rights Law, and New York City

Human Rights Law;

(b) Enjoin Defendants from harassing Plaintiff including sending private investigators

and on and off duty police officers after Plaintiff and his family and to his home;

(c) Order Defendants to develop and implement appropriate and effective measures designed to prevent discrimination, harassment, and retaliation, including but not limited to policies and training for employees and managers;

(d) Order Defendants to develop appropriate and effective measures to receive complaints of discrimination, harassment, and retaliation as well as a process for investigating such complaints;

(e) Order Defendants to make whole Plaintiff by providing appropriate backpay with pre-judgment interest, and other affirmative and equitable relief necessary to eradicate the effects of their unlawful employment practices;

(f) Order Defendants to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to medical expenses in amounts to be determined at trial but not less than Five Million Dollars ($5,000,000);

(g) Order Defendants to make whole Plaintiff by providing compensation for past and future non-pecuniary losses, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and humiliation in amounts to be determined at trial but not less than Five Million Dollars ($5,000,000);

(h) Order Defendants to pay Plaintiff punitive damages for their malicious reckless conduct described above, in amounts to be determined at trial but believed not to exceed Five Million Dollars ($5,000,000);

(i) Award Plaintiff pre-judgment interest on each and every amount owed to Plaintiff;

(j) Award Plaintiff all attorneys' fees, expert fees, and other costs; and

(k) Award any and all other relief as is or may be awardable or recoverable under

applicable law.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a trial by jury on all claims triable by a jury.

Dated: November 9, 2020
      New York, New York

Yours truly

s/Willie E. Dennis/

_____

WILLIE E. DENNIS
Plaintiff Pro Se
P.O. Box 872
New York, New York 10150
(646) 418-3329