KATHLEEN M. MCKENNA
RACHEL S. FISCHER
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIE E. DENNIS,       :

      :

           Plaintiff *Pro Se*,    :

      :

    v.       :

      :

K&L GATES LLP, DAVID TANG, JAMES    :
SEGERDAHL, JEFFREY MALETTA, MICHAEL    :
CACCESE, ANNETTE BECKER, PALLAVI WAHI,    :    Civ. No. 1:20-cv-09393-UA
JOHN BICKS, and CHARLES TEA,    :
      :     **<u>ECF CASE</u>**
      :
           Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO STAY THE ACTION
PENDING THE SUPERIOR COURT OF
THE DISTRICT OF COLUMBIA'S DISPOSITION OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................ 1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    A.    The Parties .................................................................................................. 2

    B.    The Partnership Agreement ......................................................................... 5

    C.    Mr. Dennis Flagrantly Disregards the Requirement to Arbitrate and
        Repeated Warnings from the Firm .............................................................. 6

ARGUMENT .............................................................................................................. 8

I.     PLAINTIFF'S CLAIMS ARE ARBITRABLE. .......................................................... 8

    A.    This Action Is Governed by the Federal Arbitration Act. .................................. 8

    B.    The Federal Arbitration Act Requires Arbitration of Plaintiff's Claims. ............... 8

        1.    Plaintiff Entered into a Valid and Enforceable Agreement to
            Arbitrate. ........................................................................................ 9

        2.    The Arbitration Clause in the Partnership Agreement Encompasses
            the Claims in the Complaint. ............................................................ 11

II.    THE COURT SHOULD STAY THIS ACTION PENDING DISPOSITION OF
     DEFENDANTS' MOTION TO COMPEL ARBITRATION. ........................................ 12

    A.    The FAA Authorizes The Issuance of a Stay Because the Parties Agreed To
        Arbitrate Their Disputes In A Different Jurisdiction. ......................................... 12

    B.    The Court Also Should Issue a Stay Pursuant to Its Inherent Power Because
        a Stay Will Promote Judicial Economy. ........................................................ 13

III.   THE COURT SHOULD AWARD ATTORNEYS' FEES AND COSTS TO
     DEFENDANTS BECAUSE PLAINTIFF COMMENCED THIS ACTION IN BAD
     FAITH. ........................................................................................................ 14

CONCLUSION .......................................................................................................... 16

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*,
  No. 03 Civ. 1162(WHP), 2003 WL 22024070 (S.D.N.Y. Aug. 28, 2003)...............................9

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995)...........................................................................................................8

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975).........................................................................................................15

*Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*,
  No. 10 Civ. 1853(PGG), 2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011), *aff'd*,
  483 F. App'x 634 (2d Cir. 2012) ..................................................................................14, 15

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)...........................................................................................................8

*Bank of Tokyo-Mitsubishi, Ltd. v. J.A. Jones, Inc.*,
  No. 98 CIV. 2494 (LMM), 1998 WL 283355 (S.D.N.Y. May 29, 1998) .............................13

*Browning Debenture Holders' Committee v. DASA Corp.*,
  560 F.2d 1078 (2d Cir. 1977)...........................................................................................15

*Chauffeurs, Teamsters & Helpers, Local 765 v. Stroehmann Bros. Co.*,
  625 F.2d 1092 (3d Cir.1980)............................................................................................15

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)...........................................................................................................8

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...........................................................................................................9

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018).......................................................................................................8

*Finn v. Smith Barney*,
  No. 08 Civ. 2975 (LTS)(KNF), 2008 WL 5215699 (S.D.N.Y. Dec. 8, 2008) .................13, 14

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*,
  815 F.2d 840 (2d Cir. 1987)..............................................................................................12

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)...........................................................................................................12

*Gold v. Deutsche Aktiengesellschaft,*
   365 F.3d 144 (2d Cir. 2004)........................................................................................9

*Graphic Scanning Corp. v. Yampol,*
   850 F.2d 131 (2d Cir. 1988)........................................................................................8

*Hong Wang v. Precision Extrusion, Inc.,*
   No. 1:18-CV-350 (FJS/DJS), 2018 WL 3130589, at *8 (N.D.N.Y. June 26,
   2018) ........................................................................................................................12

*JP Morgan Sec. Inc. v. La. Citizens Prop. Ins. Corp.,*
   712 F. Supp. 2d 70 (S.D.N.Y. 2010).........................................................................13

*K&L Gates LLP v. Parker,*
   Case No. 2010 CA 009371 B, 2011 WL 13315720 (D.C. Super. Ct. Sept. 6,
   2011) (Jackson, J.), *aff'd by Parker v. K&L Gates LLP,* 76 A.3d 859, 867
   (D.C. 2013) ...............................................................................................................10

*Kappel v. Comfort,*
   914 F. Supp. 1056 (S.D.N.Y. 1996)..........................................................................14

*Katz v. Cellco P'ship,*
   794 F.3d 341 (2d Cir. 2015)......................................................................................12

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936)..................................................................................................14

*LaSala v. Needham & Co.,*
   399 F. Supp. 2d 421 (S.D.N.Y. 2005).......................................................................14

*Law Offices of Joseph L. Manson III v. Aoki,*
   No. 19-CV-04392-LTS-GWG, 2020 WL 767466 (S.D.N.Y. Jan. 3),
   *reconsideration denied,* No. 19-CV-04392-LTS-GWG, 2020 WL 764125
   (S.D.N.Y. Feb. 14, 2020) ..........................................................................................13

*Mehler v. Terminix Int'l Co.,*
   205 F.3d 44 (2d Cir. 2000)........................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
   473 U.S. 614 (1985)..................................................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
   460 U.S. 1 (1983)........................................................................................................9

*Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC,*
   641 F. Supp. 2d 196 (S.D.N.Y. 2009)..................................................................12, 13

*Newspaper Guild of N.Y. v. N.Y. Times Co.*,
No. 81 Civ. 4972 (WCC), 1981 U.S. Dist. LEXIS 15366 (S.D.N.Y. Oct. 29,
1981) ................................................................................................................................15

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016), *aff'd*, 815 F. App'x 612 (2d Cir. 2020)..................................8, 9

*Parker v. K&L Gates LLP*,
76 A.3d 859 (D.C. 2013) ................................................................................................10, 11

*Powers v. Fox Television Stations, Inc.*,
923 F. Supp. 21 (S.D.N.Y. 1996) ........................................................................................12

*Salzano v. Lace Ent.*,
No. 13 Civ. 5600(LGS), 2014 WL 3583195 (S.D.N.Y. July 18, 2014) .................................12

*Sands Bros. & Co., Ltd. v. Nasser*,
No. 03 Civ. 8128(BSJ), 2004 WL 26550 (S.D.N.Y. Jan. 5, 2004)........................................15

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*,
269 F. Supp. 2d 356 (S.D.N.Y. 2003)...................................................................................12

*Thomas v. Pub. Storage, Inc.*,
957 F. Supp. 2d 496 (S.D.N.Y. 2013)...................................................................................12

*Wash. Nat'l Ins. Co. v. OBEX Group LLC*,
958 F.3d 126 (2d Cir. 2020)..................................................................................................14

**STATUTES**

9 U.S.C. § 1 *et seq*.............................................................................................................8, 14

9 U.S.C. § 2 ............................................................................................................................8

9 U.S.C. § 3 .......................................................................................................................9, 12

9 U.S.C. § 4 ...................................................................................................................9, 12, 13

Defendants K&L Gates LLP ("K&L Gates" or the "Firm'), David Tang, James Segerdahl, Jeffrey Maletta, Michael Caccese, Annette Becker, Pallavi Wahi, John Bicks, and Charles Tea (collectively, the  "Defendants"), respectfully move this Court for an Order staying these proceedings pending disposition by the Superior Court of the District of Columbia of Defendants' Motion to Compel Arbitration, which has been filed today, a copy of which is attached to the Declaration submitted in support of the instant Motion to Stay as Exhibit 1, and is incorporated herein as if set out in full.

## PRELIMINARY STATEMENT

As a former equity partner of K&L Gates, Plaintiff Willie Dennis voluntarily executed the Firm's Partnership Agreement (defined below) containing a broad arbitration provision, in which he expressly agreed to arbitrate "any controversy, claim, or dispute between or among one or more Partners, including but not limited to any former partners, and the Partnership."  Mr. Dennis further agreed that any such disputes "shall be finally settled by a single arbitrator in an arbitration to be held in the District of Columbia" and be strictly confidential.  Notwithstanding this clear requirement to assert any disputes exclusively in confidential arbitration in the District of Columbia, and having been reminded of this requirement multiple times by the Firm, Mr. Dennis filed a *Pro Se* Complaint in this Court alleging claims stemming entirely from his disputes with Defendants.

Mr. Dennis's *Pro Se* Complaint is utterly baseless, is rife with false and defamatory allegations and was intentionally wrongly filed in this Court for the improper purpose of smearing Defendants through expected publicity.  It also represents just the latest chapter in Mr. Dennis's nearly two-year campaign of relentless harassment targeting the Firm and its partners.

Because this matter belongs in arbitration and a motion compelling arbitration is currently pending in the D.C. Superior Court, Defendants respectfully move this Court for an Order staying these proceedings pending the outcome of their motion.  Should the D.C. Superior Court grant the motion to compel arbitration, the Defendants submit that the instant action should be dismissed.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.      **The Parties**

K&L Gates is a law firm with offices in multiple U.S. cities, including one located at 599 Lexington Avenue in New York, New York.  The individual Defendants are current partners at K&L Gates and residents of various states.

Mr. Dennis is an attorney and former equity partner at K&L Gates.  Mr. Dennis joined K&L Gates as an equity partner resident in the Firm's New York office in 2005, and remained with the Firm until May 13, 2019, when he was expelled pursuant to a vote of the partnership. Mr. Dennis's expulsion from the Firm was the consequence of an extensive and documented record of erratic, harassing and other improper behavior, which he refused to stop despite repeated warnings.

In the year-and-a-half since his expulsion, Mr. Dennis has intensified his misconduct, sending literally thousands of unwanted emails, text messages, faxes and voicemails to numerous Firm lawyers – often in rapid succession and at all hours of the day and night – many of which clearly are intended to harass, humiliate, intimidate or stoke fear in his targeted victims.  Perhaps most offensive – while Mr. Dennis purports to have been an advocate for women in the Firm, he has directed some of his most vicious harassment at the Firm's women lawyers – particularly

women of color – repeatedly calling them racist and degrading names and attacking them in vulgar sexual terms.

When considering this Motion, it is important for the Court to understand that the *Pro Se* Complaint filed by Mr. Dennis, in addition to being frivolous and vexatious in its own right, is inseparable from, and in furtherance of, his campaign of harassing Firm lawyers that continues to this day.  He is not motivated in any principled way to attempt in good faith to resolve a genuine dispute he may believe he has with the Firm.  If he were, he would have sought long ago to arbitrate in accordance with the terms of the Firm's Partnership Agreement.  As demonstrated below, Mr. Dennis knows full well he is required to arbitrate any disputes with the Firm – and the only reason he flagrantly disregarded that obligation by filing a Complaint in this Court was to disseminate publicly his outrageous lies and smears.  As his own voluminous communications establish, Mr. Dennis is a serial harasser, not a victim, and his Complaint is nothing more than a pretext to further torment innocent people – several of whom are diverse – and divert attention from his appalling misconduct.

Conspicuously absent from Mr. Dennis's Complaint is any mention of the thousands of messages he has directed at Firm lawyers over nearly two years.  While some of his messages are merely bizarre - such as accusing the Firm of employing advanced technologies acquired from China to intercept and record his calls, clone his text messages, and otherwise interfere with his electronic communications – others are much more disturbing, and have included numerous vile, sexist, racist, anti-Semitic and physically threatening statements.  For example, Mr. Dennis has sent messages:

- Threatening the children of Firm lawyers, stating in one case: *"I need your kids contact information.  Can i get it through [their school]  It is going to be a long winter ..bitch  I am going to chase them down and inflict such ... the sins of the father ... is real"* [ellipses in original];

- Telling a Jewish lawyer to *"Start the ovens,"* and separately threatening to *"kill u and or your kids"*;

- Calling Black and other diverse women lawyers racist, misogynistic and demeaning epithets, such as *"cotton head"*, *"cottonseed"*, *"biscuit head"*, *"gutter rat"*, *"filthy one"*, *"idiot"*, *"trash"*, *"clown"*, and *"garbage"*;

- Repeatedly referring to an Asian-American lawyer as *"Wuhan,"* and accusing him of being a sleeper cell for the Chinese Communist Party and a grave threat to U.S. national security;

-  Repeatedly threatening lawyers in ominous religious terms: *e.g., "U just did not know that God intends for you to be a 'biblical symbol' ... during these unholy times"* … *"It must be a biblical solution for a biblical sin during a biblical moment"* … and circulating to several lawyers a photo of a Biblical passage which reads *"Fret not thyself because of evildoers, neither be thou envious against the workers of iniquity. For they shall soon be cut down like the grass, and wither as the green herb."* … *"the wicked He will destroy"*;

- Targeting a lawyer in a profane, racist-laden threat: *"You spat on God's words.  Over children  U piece of shit"* … *"All a big fuckkng ni\*\*er game .. right []  taping my cousins phone call on the day she died ... that was May bitch"* … *"When this is over you are going to wish you 'never .. ever ..' met my Lord of the Old Testament"*;

- Taunting a lawyer in a series of crude texts attacking his wife:  *"What is your wife's name?  Where did you meet her?  Sex on the first date?  How many guys before you?"*;

- Humiliating a married Black woman lawyer in a series of vulgar emails, copied to several others, falsely insinuating her involvement in a sexual relationship with three male lawyers, which included such perverted comments as: *"Is [name omitted] big"*, *"Was it good?"*, *"Maybe [name omitted] could join and make it a three some"*, and *"i know it must have been a 'hard' but exciting discussion 😀"*.

McKenna Decl. to the Motion to Compel, ¶ 6.  Additional examples of Mr. Dennis's extensive harassment and other improper conduct are contained in the Firm's email to him dated August 18, 2020.  *See* McKenna Decl. to the Motion to Compel, ¶ 7 and Ex. B.

In response to Mr. Dennis's harassment, the Firm has taken, and continues to take, appropriate measures to protect the security and well-being of its personnel, including reporting his conduct to authorities.

### B.     The Partnership Agreement

As addressed more fully in the Firm's Motion to Compel Arbitration (McKenna Decl. Ex. 1), while a member of the partnership at K&L Gates, Mr. Dennis executed and agreed to be bound by the terms of the Firm's Partnership Agreement.  (A copy of the pertinent portions of the Partnership Agreement, which bears Mr. Dennis' signature, is attached at McKenna Decl. to the Motion to Compel, Exhibit A).  Among the terms of the Partnership Agreement is a requirement to submit all disputes between any partner (or former partner) and any other partner(s) or the Firm exclusively to confidential arbitration before the American Arbitration Association in the District of Columbia.

Section 12.01(a) of the Partnership Agreement provides:

> ***Any controversy, claim or dispute between or among the Partners, including but not limited to any former partners, and any controversy, claim or dispute between or among one or more Partners, including but not limited to any former partners, and the Partnership,*** directly or indirectly concerning this Agreement or the breach hereof or the subject matter hereof, including questions concerning the scope and applicability of this Section 12.01, ***shall be finally settled by a single arbitrator in an arbitration to be held in the District of Columbia***, in accordance with the Uniform Arbitration Act of the State of Delaware, as amended and from time to time in effect, and the rules of commercial arbitration then followed by the American Arbitration Association or any successor to the functions thereof.  The arbitrator shall be an attorney duly admitted or licensed to practice law in at least one of the states of the United States or the District of Columbia and a member in good standing of the American Law Institute.  The arbitrator shall have the right and authority to determine how his or her decision or determination as to each issue or matter in dispute may be implemented or enforced, including the use of remedies legal and equitable, specific performance and injunctions, temporary,

5

preliminary and permanent.  Any decision or award of the arbitrator shall be final and conclusive on the Partners, including but not limited to any former partners, and the Partnership, and there shall be no appeal therefrom.

*Id.* (emphasis supplied).

In addition, Section 12.01(b) of the Partnership Agreement specifically states:

> ***Each of the Partners agrees that any action to compel arbitration pursuant to this Agreement that may be required shall be brought in the Superior Court of the District of Columbia***, or any successor to the jurisdiction thereof. Application for confirmation of any decision or award of the arbitrator, for an order of enforcement of such legal or equitable remedies determined by the arbitrator or for any other remedies which may be necessary to effectuate such decision or award shall also be brought in such Superior Court. ***Each of the Partners, including but not limited to any former partners, hereby consents to the jurisdiction of the arbitrator and of such Court and waives any objection to the jurisdiction of such arbitrator and Court.***

*Id.* (emphasis supplied).

The Partnership Agreement further provides that "[a]ll proceedings in . . . arbitration under this Agreement shall be confidential" with the exception of motions to compel arbitration or the submission of the dispute to confidential mediation.  (Partnership Agreement, at § 12.02).

## C.   Mr. Dennis Flagrantly Disregards the Requirement to Arbitrate and Repeated Warnings from the Firm

In mid-September 2020, Mr. Dennis threatened to file a lawsuit in this Court if the Firm did not agree to settle with him.  He made the threat while simultaneously continuing to target Firm lawyers with harassing text messages of the type described above.  Both before and after his threat of litigation, the Firm had advised Mr. Dennis **no less than six times in writing** that any claims he believed he had against the Firm or any of its partners were required to be asserted exclusively in arbitration in accordance with the Partnership Agreement.  (*See, e.g.*, McKenna Decl. to the Motion to Compel, ¶ 7 and Ex. B.)

Notwithstanding his express contractual agreement to arbitrate, and the Firm's repeated reminders, on November 9, 2020, Mr. Dennis intentionally and wrongfully filed a 46-page, 20-count *Pro Se* Complaint in this Court.  *See* Dkt. 1.  Mr. Dennis's *Pro Se* Complaint is frivolous and vexatious and must be seen as inseparable from, and in furtherance of, his contemporaneous and historical conduct of harassing Firm lawyers (examples of which are provided above).  Mr. Dennis knows full well he is required to arbitrate – and the only reason he flagrantly disregarded his obligation to do so by filing in this Court was to disseminate publicly his outrageous lies and smears.

That Mr. Dennis's claims are subject to mandatory arbitration is clear from the face of the *Pro Se* Complaint.  In Paragraph 1 of the Complaint, under the heading "NATURE OF THE ACTION," Mr. Dennis alleges that he "was improperly terminated in bad faith, and contrary to the Firm's partnership agreement." Compl., at ¶ 1.  Because Mr. Dennis's allegations relate to a *"controversy, claim or dispute between or among one or more Partners, including but not limited to any former partners, and the Partnership, directly or indirectly concerning th[e Partnership] Agreement or the breach hereof or the subject matter hereof*," Partnership Agreement, at § 12.01(a), Defendants have filed a Motion to Compel Arbitration with the Superior Court of the District of Columbia, as required by Section 12.01(b) of the Partnership Agreement ("Each of the Partners agrees that any action to compel arbitration pursuant to this Agreement that may be required shall be brought in the Superior Court of the District of Columbia").  Defendants request that the Court stay this action pending the disposition of their Motion to Compel pending in the District of Columbia. Should the D.C. Superior Court grant the motion to compel, the instant action should be dismissed.

## ARGUMENT

### I.     PLAINTIFF'S CLAIMS ARE ARBITRABLE.

#### A.     This Action Is Governed by the Federal Arbitration Act.

The Defendants request to stay this action pending the disposition of their motion to compel arbitration is appropriate because Plaintiff's claims are plainly arbitrable.  The question of arbitrability of Plaintiff's claims in federal court is governed by the FAA, which applies to all contracts involving interstate commerce, subject to certain exceptions that are not applicable in this case.  9 U.S.C. § 1 *et seq.*  "Interstate commerce" is construed broadly, and clearly governs an employer's business that is national in scope, as is the case here.  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995); *see also Graphic Scanning Corp. v. Yampol*, 850 F.2d 131, 133 (2d Cir. 1988) (concluding that FAA applies where employer operated in several states).  The Firm's Partnership Agreement necessarily implicates interstate commerce, as confirmed by the Complaint.  (Compl. ¶¶ 12, 15-22.)

#### B.     The Federal Arbitration Act Requires Arbitration of Plaintiff's Claims.

Under the FAA, "a written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be *valid, irrevocable, and enforceable*, save upon grounds as exist at law or in equity for the revocation of any contract." *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-129 (2001) (quoting 9 U.S.C. § 2) (internal quotation marks omitted; emphasis added).  The FAA, and the strong federal policy favoring arbitration that it embodies, "requires courts rigorously to enforce arbitration agreements."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation and citation omitted).  *See also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (discussing the "liberal federal policy favoring arbitration" under the FAA); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("This policy is founded on a desire to

8

preserve the parties' ability to agree to arbitrate, rather than litigate, disputes.") (alteration and citation omitted), *aff'd*, 815 F. App'x 612 (2d Cir. 2020).

The FAA, "[b]y its terms … leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); 9 U.S.C. §§ 3, 4.  The law is clear that arbitration clauses are to be construed as broadly as possible, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### 1.    *Plaintiff Entered into a Valid and Enforceable Agreement to Arbitrate.*

The Partnership Agreement is unquestionably a valid and enforceable written contract in which Mr. Dennis agreed to arbitrate "[a]ny controversy, claim or dispute between or among the Partners" or "between or among one or more Partners, including but not limited to any former partners, and the Partnership." (McKenna Decl. to Motion to Compel, Ex. A.)  *See Alemac Ins. Servs., Inc. v. Risk Transfer Inc.*, No. 03 Civ. 1162(WHP), 2003 WL 22024070, at *6 (S.D.N.Y. Aug. 28, 2003) (granting a motion to compel arbitration because "the broad arbitration clause in the Partnership Agreement encompasses all pleadings before this Court"); *see also, e.g.*, *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (under New York law, a person "who signs or accepts a written contract … is conclusively presumed to know its contents and to assent to them.") (citation omitted).

The Superior Court of the District of Columbia and a unanimous D.C. Court of Appeals previously have held that the arbitration and forum selection clauses in the K&L Gates Partnership Agreement were valid and enforceable against a former K&L Gates partner who, like Mr. Dennis, sought to pursue alleged discrimination claims against the Firm in court.  *See K&L Gates LLP v. Parker*, Case No. 2010 CA 009371 B, 2011 WL 13315720 (D.C. Super. Ct. Sept. 6, 2011) (Jackson, J.) (requiring a former K&L Gates partner, who had commenced suit in California state court, to arbitrate his claims against the Firm in the District of Columbia in accordance with the Partnership Agreement), *aff'd by Parker v. K&L Gates LLP*, 76 A.3d 859, 867 (D.C. 2013) ("we conclude that the arbitration and forum-selection clauses [in the K&L Gates Partnership Agreement] are valid and enforceable against Mr. Parker").  *See* McKenna Decl. to the Motion to Compel, Exs. D and E.  In that case, the court held that the arbitration provision in the Partnership Agreement "clearly and unambiguously demonstrates the existence of an arbitration agreement." *K&L Gates*, 2011 WL 13315720, at *4.  In affirming the order compelling arbitration, a unanimous D.C. Court of Appeals agreed that the arbitration clause and the forum selection clause were valid and enforceable against the former partner who was "a seasoned attorney, which further supports holding [the partner] to his agreement." *Parker*, 76 A.3d 859, at 866-67.  Likewise, Mr. Dennis is a seasoned attorney – who, according to the Complaint, is admitted to practice law in New York, New Jersey and the District of Columbia – and there can be no legitimate dispute that he knowingly and voluntarily entered into a valid and enforceable agreement to arbitrate any dispute with the Partnership or any of its partners in the District of Columbia.

 2.     ***The Arbitration Clause in the Partnership Agreement Encompasses the Claims in the Complaint.***

The arbitration clause in the Partnership Agreement, which provides for arbitration of "*any controversy, claim or dispute*" between or among the Partners, or between a partner and the Partnership, is "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability" of all claims.  *Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000) (characterizing clause providing for arbitration of "any controversy or claim between [the parties] arising out of or relating to the Agreement" as "classically broad") (citations omitted).

In reviewing the language of the arbitration provision contained in the Firm's Partnership Agreement, the D.C. Court of Appeals held that the "broad" language evinced the parties' intent to arbitrate all employment-related disputes, including federal and state tort and statutory claims:

> The clause does not limit coverage to contractual claims or exclude tort and statutory claims; rather, it explicitly covers any claim concerning the subject matter of the partnership agreement. Accordingly, we conclude that any claim—whether sounding in contract, tort, or statute—that arises out of Mr. Parker's employment relationship with K&L Gates is covered by the arbitration clause.
>
> …
>
> Mr. Parker's employment relationship with K&L Gates is part of the "subject matter" of the partnership agreement, and all of Mr. Parker's contractual and non-contractual claims concern that relationship. In fact, Mr. Parker himself describes his claims as "arising from termination of his K&L Gates partnership." We therefore conclude that the trial court did not err in interpreting the arbitration clause to apply to tort and statutory claims as well as contract claims.

*Parker*, 76 A.3d at 867-68.

All of Mr. Dennis's claims in the Complaint stem from his grievances about the manner in which he was compensated and expelled from the Firm pursuant to the Partnership Agreement.  Specifically, Mr. Dennis alleges that: (i) he was undercompensated and

11

underutilized as compared to white partners; (ii) the practice of using "origination credit" towards the calculation of partner compensation is systemically racist; and (iii) "[e]very aspect of Plaintiff's expulsion [from the partnership] was inconsistent with the Firm's by-laws." (Compl. at ¶ 117.) As such, Plaintiff's claims fall squarely within the broad scope of the arbitration provision in the Partnership Agreement.[1]

## II.     THE COURT SHOULD STAY THIS ACTION PENDING DISPOSITION OF DEFENDANTS' MOTION TO COMPEL ARBITRATION.

### A.     The FAA Authorizes The Issuance of a Stay Because the Parties Agreed To Arbitrate Their Disputes In A Different Jurisdiction.

Section 3 of the FAA authorizes a stay of federal proceedings "where the court is satisfied that the issue before it is arbitrable under the agreement." *Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, 641 F. Supp. 2d 196, 202 (S.D.N.Y. 2009) *citing Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987). *See also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (a stay is mandatory when "all of the claims in an action have been referred to arbitration."). Although Section 4 of the FAA allows a court to compel arbitration, "a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district." *Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356, 363

---

[1] Courts addressing arbitration provisions with language similar to the provision in the Partnership Agreement have held that the "broad" language evinces the parties' intent to arbitrate an array of disputes, including federal and state statutory employment-related claims. *See, e.g., Hong Wang v. Precision Extrusion, Inc.*, No. 1:18-CV-350 (FJS/DJS), 2018 WL 3130589, at *8 (N.D.N.Y. June 26, 2018) (holding that a "broad" arbitration provision requiring plaintiff to arbitrate all disputes relating to her employment covered all claims, including her § 1981 claim); *Salzano v. Lace Ent.*, No. 13 Civ. 5600(LGS), 2014 WL 3583195, at *2-3 (S.D.N.Y. July 18, 2014) (holding that the "broad" arbitration provision requiring the arbitration of "all disputes" "covers all claims, including FLSA and NYLL claims."); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (holding that ADEA claims were arbitrable under provision requiring arbitration of "any dispute, claim or controversy" including "any controversy… arising out of the employment or termination of employment of such registered representative"); *Powers v. Fox Television Stations, Inc.*, 923 F. Supp. 21, 22 (S.D.N.Y. 1996) (granting motion to compel arbitration of age discrimination claims brought under state law where the arbitration clause covered "[a]ll disputes and controversies of every kind and nature arising out of or in connection with this agreement."); *see also Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 497-98, 500 (S.D.N.Y. 2013) (holding that broad arbitration clauses, like the clauses in this case, cover "statutory claims even if the 'clause at issue does not mention [the specific] statutes or statutes in general'") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 615 (1985)).

(S.D.N.Y. 2003); 9 U.S.C. § 4 ("the hearing and proceedings under [the parties' arbitration] agreement shall be within the district in which the petition for an order directing such arbitration is filed.").  *See also JP Morgan Sec. Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 82-83 (S.D.N.Y. 2010) (holding that the court could not compel arbitration scheduled to occur outside the Southern District of New York.)  Therefore, when an arbitration agreement specifies the locale for an arbitration that is outside the district, the action must be stayed pending the outcome of the arbitration.  *See, e.g.*, *Law Offices of Joseph L. Manson III v. Aoki*, No. 19-CV-04392-LTS-GWG, 2020 WL 767466, at *4 (S.D.N.Y. Jan. 3), *reconsideration denied*, No. 19-CV-04392-LTS-GWG, 2020 WL 764125 (S.D.N.Y. Feb. 14, 2020) (granting motion to stay when arbitration clause provided for arbitration in Washington, D.C.); *Nat'l City Golf Fin.*, 641 F. Supp. 2d 196 (S.D.N.Y. 2009) (granting motion to stay); *Bank of Tokyo-Mitsubishi, Ltd. v. J.A. Jones, Inc.*, No. 98 CIV. 2494 (LMM), 1998 WL 283355 (S.D.N.Y. May 29, 1998) (granting motion to stay pending resolution of petition to compel arbitration in North Carolina).

Here, all of Plaintiff's claims are arbitrable, and the parties expressly agreed to arbitrate any and all disputes in confidential arbitration in the District of Columbia.  Defendants have initiated an action in the Superior Court of the District of Columbia to compel arbitration, in accordance with the arbitration provision in the Partnership Agreement.  As such, this case should be stayed pending disposition of the motion to compel arbitration.  Should the D.C. Superior Court grant the motion to compel, dismissal of the instant action will be warranted.

**B.     The Court Also Should Issue a Stay Pursuant to Its Inherent Power Because a Stay Will Promote Judicial Economy.**

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, its counsel, and for litigants." *Finn v. Smith Barney*, No. 08 Civ. 2975 (LTS)(KNF), 2008 WL

5215699, at *2 (S.D.N.Y. Dec. 8, 2008), *citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Courts in this District consider five factors in deciding whether to grant a stay: "(1) the private

interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against

the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants;

(3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5)

the public interest." *LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005) (citing

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996))

These factors overwhelmingly favor granting a stay here.  If this case were to be

permitted to proceed, the parties' agreement to arbitrate disputes "would effectively be negated."

*Finn*, 2008 WL 5215699, at *3.  The public interest would be served by entering a stay, because

federal policy favors the enforcement of arbitration agreements.  *See* 9 U.S.C. § 1; *Wash. Nat'l*

*Ins. Co. v. OBEX Group LLC*, 958 F.3d 126, 138 (2d Cir. 2020) (noting the "strong federal

policy favoring arbitration").  Denial of a stay would also needlessly burden the parties and the

Court with duplicative proceedings.  In light of these considerations, this case should be stayed

pending disposition of Defendants' motion to compel arbitration in the D.C. Superior Court.

Should the D.C. Superior Court grant the motion to compel, the instant action should be

dismissed.

## III.   THE COURT SHOULD AWARD ATTORNEYS' FEES AND COSTS TO DEFENDANTS BECAUSE PLAINTIFF COMMENCED THIS ACTION IN BAD FAITH.

It is well-established in the Second Circuit that a district court may assess attorneys' fees,

pursuant to its inherent power, "when the losing party has acted in bad faith, vexatiously,

wantonly, or for oppressive reasons." *See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10

Civ. 1853(PGG), 2011 WL 1002439, at *3 (S.D.N.Y. Mar. 16, 2011), *aff'd*, 483 F. App'x 634

(2d Cir. 2012) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59

(1975)).  The Second Circuit has held that a claim is brought in "bad faith" when it is "entirely

without color and has been asserted wantonly, for purposes of harassment or delay, or for other

improper reasons." *Amaprop Ltd.*, 2011 WL 1002439, at *3 (quoting *Browning Debenture*

*Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1088 (2d Cir. 1977).

      Mr. Dennis knows full well he is required to arbitrate any disputes he may have with

Defendants – he was informed of that requirement in writing no fewer than six times prior to

initiating this action (*See* McKenna Decl. to the Motion to Compel, ¶ 7 and Ex. B).  There can be

no doubt that Mr. Dennis flagrantly disregarded his agreement to arbitrate to disseminate

publicly outrageous lies and smears in furtherance of his continuing harassment of the Firm and

its lawyers.

      District courts have awarded attorneys' fees "where 'the party refusing arbitration acted

without justification or did not have a reasonable chance to prevail.'"  *Sands Bros. & Co., Ltd. v.*

*Nasser*, No. 03 Civ. 8128(BSJ), 2004 WL 26550, at *3 (S.D.N.Y. Jan. 5, 2004) (awarding

attorneys' fees where "Plaintiffs have failed to make even a colorable argument explaining why

[Defendant] could not require the Individual Plaintiffs to arbitrate," and where losing parties had

"decided to mischaracterize or ignore the law of the Circuit—a tactic that they could not have

expected to 'have a reasonable chance to prevail' ") (quoting *Newspaper Guild of N.Y. v. N.Y.*

*Times Co.*, No. 81 Civ. 4972 (WCC), 1981 U.S. Dist. LEXIS 15366, at *4-5 (S.D.N.Y. Oct. 29,

1981); citing *Chauffeurs, Teamsters & Helpers, Local 765 v. Stroehmann Bros. Co.*, 625 F.2d

1092, 1094 (3d Cir.1980) ("In suits to compel one party to submit to arbitration[,] ... [attorneys']

fees are generally awarded ... if the party resisting arbitration did not have a 'reasonable chance

to prevail.' ") (citations omitted)).  As Mr. Dennis could not have reasonably believed that he

had a right to pursue his claims in this Court and commenced this action in furtherance of his harassment of the Defendants, the Court should use its inherent authority to award attorneys' fees and costs associated with this Motion to Stay.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to stay this action and award the Defendants' their fees and costs associated with this motion.

Dated: New York, New York
November 19, 2020

PROSKAUER ROSE LLP

By:     /s/ Kathleen M. McKenna

KATHLEEN M. MCKENNA
RACHEL S. FISCHER
Eleven Times Square
New York, NY 10036
(212) 969-3000
(212) 969-2900

*Attorneys for Defendants*