Willie E. Dennis
6858 Hidden Glade Place
Sanford, Florida 32771
518-414-7163
woc2020@gmail.com

February 11, 2025
**VIA ECF**
The Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re Willie Dennis v. K&L Gates LLP, et al No.120-cv-09393-MKV

Dear Judge Vyskocil,

I am writing you to request that the (i) letter addressed to this Court dated February 4, 2025 be sealed ( the " Letter ") and (ii) submission addressed to the Arbitrator, dated January 31, 2025, requesting ( the " Request") modification of his order dated January 7, 2025 ( the "Order ")be submitted in the redacted form included in this filing, since both the Letter and Request contain certain information that should not be disclosed on the public docket. I make this request after attempting to balance the public's interest in an open forum and the risk of compromise of business interests. **(1)**

Finally, I want to simply note my disagreement with three of the assertions K&L Gates made in its letter motion seeking sealing of material, filed via ECF on January 13, 2025, without my review or consent.**(2)** Specifically, K&L Gates' assertions that:

( A ) This Court must sit like a "potted plant" while K&L Gates submits to the Arbitrator false and misleading material information from a "criminal " case litigated before the District Court of the Southern District of New York, resulting in a 5 year sentence, two of which I completed at MDC Brooklyn. That request for this Court to put on blinders while K&L Gates conducts its "business ", highlights why your continued supervision of this matter is necessary to ensure a fair, just and equitable outcome. ( **See paragraph 4 of K&L Gates' filing via ECF on January 13, 2025)**

(B) The record should reflect that K&L Gates intentionally "violated" its own partnership agreement on numerous occasions as early as 2017 by failing to treat me as a partner of the Firm (thus making me an "employee" of the firm) and ultimately suspending my resources without cause on January 30, 2019, contrary to the terms of the partnership agreement, causing me to lose all my clients. (**See paragraph 5 of K&L Gates' filing via ECF on January 13, 2025 and Cross Examination Testimony of a member of the Management Committee of K&L Gates and Managing Partner of the New York office, John Bicks on October 14, 2022, page 539)**

(C)The record should further reflect that K & L Gates further intentionally "violated " the partnership by providing confidential financial information to my ex-wife and her attorney without the compulsion of a subpoena, and without my knowledge or consent.(**3**) (**See evidentiary hearing held by the District Court of the Southern District of New York in September 2022, when that court ruled that the information provided by K&L Gates to my ex-wife and her attorney was not subject to attorney client privilege as my ex-wife's attorney asserted.) (4)**

I thank the Court for its consideration and attention to this matter.

/s/ Willie E. Dennis

cc: Kathleen McKenna, Esq (by ECF)
Rachel Fisher, Esq ( by ECF)

1. With sincere regret, and with the added shame and embarrassment of my family, particularly my two sons, Grant and Lee, as a result of the "criminal" case significant portions of the information contained in the Request's redacted form are already on the public docket. This fact has made it very difficult for me to obtain employment.

2.K&L Gates prior to filing the motion on January 13, 2025, without my review or consent, was aware at the time of filing that I knew about material factual errors in the Order and intended to pursue all legal remedies available to me. Of course I would not have objected to K&L Gates' request for confidentiality only to K&L Gates' statements of perceived facts based on false and misleading material information.

3. I request the Court to consider that there may be other others actions of K&L Gates which will establish that K&L Gates "violated" its partnership agreement, but as I have not been permitted discovery, K&L can shield its conduct behind documents in its exclusive possession and control, and the fact that it does not have to answer questions at deposition.

**4**. John Bicks a member of the Management Committee of K& L Gates and Managing Partner of the New York office, less than 30 days after the evidentiary hearing in September, testified to his knowledge K&L Gates had never communicated with my ex-wife or her attorney. Mr Bicks also stated in his testimony that he asked the General Counsel of K&L Gates, Jeffery Maletta, whether the firm communicated with my ex-wife's and Mr Maletta told him " We have not." **(Cross Examination Testimony of a member of the Management Committee and Managing Partner of the New York office, John Bicks, on October 14, 2022, page 539, lines 16-24)**

As these potential acts of perjury by Mr. Bicks and Mr. Maletta have just come to light all possible actions are being explored to determine whether Mr Bicks and/or Mr Maletta, on behalf of K& L Gates, committed acts of perjury before the District Court of the Southern District of New York.

**Willie E. Dennis**
[redacted]

January 31, 2025

Arbitrator [redacted]
[redacted]

Re: *Willie E. Dennis v. K&L Gates*, AAA Case No. 01-21-0002-7637
Request For Modification of Order dated January 7, 2025 Due to Material Factual Error and Other Issues

Dear Arbitrator [redacted]:

I want to advise you that there is a material factual error in the information submitted to you by K&L Gates and its counsel, Proskauer (collectively "K&L") which has a materially adverse effect on the order dated January 7, 2025 (the "Order") and for this reason and others set forth below I hereby request a modification of the Order **(1).**

**Material Factual Error**

Specifically, the Order refers to The District Court of the Southern District of New York (the "Court") referencing the year 2018 in sentencing questions (page 6 of the Order ) as to when the victims, my former law partners John Bicks, Calvina Bostick and Eric Cottle (collectively the "Victims") were injured. The Department of Justice (the "Government") filed no other actions on behalf of any other partners or employees of K&L. The year should be 2019. The material provided to you by K&L has a typographical error. **(2).**

The Government's actions against me related only to conduct by me after I was suspended from K&L on January 30, 2019 at 1:44 am. On that date I was denied entry into K&L and denied access to all firm resources rendering me unable to service clients, thus giving rise to legitimate causes of action, including breach of contract.

**THE GOVERNMENT'S INDICTMENT STATES THE FOLLOWING:**

> ***"For example, between, on, or about May 13, 2019, and on or about September 20, 2019, Willie Dennis, the defendant, sent at least hundreds of written communications to Victims. Between on or about September 4, 2019, and on or about September 20, 2019, alone, Dennis sent at least approximately 200 hundred written communications to Victims and other members of the Law Firm."***

Moreover, the testimony of the Victims also shows why the reference to 2018 is a typographical error and should accurately state 2019.

**A. Cross Examination Testimony of the member of the Management Committee and Managing Partner of the New York office, John Bicks on October 14, 2022, page 546.**

**Question**

So -you never sent me a text message stating that you felt intimidated or threatened?

**Answer**

At the time we were sitting in my office, which would have been before January of 2019, you and I had never had an unkind word.

**Question**

Even after my first text message where you felt intimidated and threatened?
What was the first date of the message?

**Answer**

The first text message that I recall receiving, I won't have the exact date, but I want to say it was in May of 2020 was the first text message.

**B. Direct Examination Testimony of Calvina Bostick, Partner in the New York office, on October 14, 2022, pages 582-583.**

**Question**

Before 2019 what was the nature of your relationship with the defendant?

**Answer**

We were colleagues

**Question**

What type of interactions did the two of you have?

**Answer**

We were cordial

**Question**

What, if any interaction did you have with the defendant after he stopped working at K&L in May of 2019?

**Answer**

He text -- that's when he started texting me more and I saw him twice

Well he first started texting me in March, right around the time he was having issues with the firm; friendly, benign texts. Three.

**C. Cross Examination Testimony of Calvina Bostick, Partner in the New York office, on October 14, 2022, page 665. (3)**

**Question**

So I know you are speaking for --when did you first feel intimidated and threatened is what I am asking, not everyone else

**Answer**

At first I felt intimidated at our meeting in the deli, so June

**Question**

June of what year

**Answer**

2019

**D. I ask you to also note that the Special Agent of the Federal Bureau of Investigations, Gary Cobb, called to testify by the Government provided testimony only as to e-mails reviewed in June, September and November of 2020**

(See Testimony of Special Agent Gary Cobb on October 14, 2022, page 685)

Finally in the beginning of 2019, immediately after the loss of my resources at K&L, my counsel at the time, Paul Martin, noted to K&L that all of my communications were solely of a business nature. Mr. Martín requested copies of any e-mails that were considered "criminal in nature" and to date K&L has not responded. I have attached a copy of this communication below.

Because of this material factual error, your Order imposed a penalty on me for criminal sanctions that should never have factored into your decision. These criminal sanctions were imposed upon me without the application of the higher standards applied by the Southern District of New York.

**Discovery Required**

Since the Victims were injured after May of 2019, their injuries were certainly not the reason for the loss of my firm resources on January 30, 2019 ~~Thus your order on November 30, 2021, requiring discovery on these matters should be reinstated.~~



~~"On November 30, 2021, this Arbitrator entered an Order denying request to file a Dispositive Motion with leave to refile once discovery was completed pursuant to the Preliminary Hearing and Scheduling Order."~~

~~Discovery is needed for, among other things, to understand:~~

**A. Why I lost my resources on January 30, 2019 at 1:44 am?**

As I have consistently asserted it was soley because of my conversations relating to the business of K&L and the rights of women attorneys at K&L.

https://www.law.com/thelegalintelligencer/2018/12/12/at-kl-gates-women-alleged-misconduct-and-left-as-accused-partners-stayed-

For example, was my loss of resources related to the e-mail I sent to the Chairman of K&L, Michael Caccese, on January 8, 2019 (less than three weeks prior to the loss)sharing that actions of certain partners of K&L were jeopardizing an already strained relationship with Microsoft? See the e-mail attached below.

Or was it related to the e-mail I sent to General Managing Partner of K&L, James Segerdhal on January 29, 2019 (the day before I lost my resources) regarding the firm's 10 year $500 million dollar financial losses attributable to Microsoft and notifying him that I intended to take the issues to the full partnership at 11 am the next morning.

**John Bicks, member of the Management Committee and Managing Partner of the New York office, stated the following in his testimony before the Court:**

**Question**

John, when did you learn that I had been suspended from the firm and lost all my resources?

**Answer**

I was aware that this decision was in the works. (Direct Examination of the member of the Management Committee and Managing Partner of the New York office, John Bicks on October 14. 2022, page 532) **(3)**

Finally, K&L was well aware of the effort I was making throughout 2018 to improve K&L's relationship with Microsoft. Please see below an e-mail from the Managing Partner of the US Offices of K&L, Michael Zanic dated **January 29, 2018** in which Mr. Zanic discusses my efforts to develop K&L's relationship with Microsoft. The General Managing Partner of K&L is included on the e-mail. Approximately one year later K&L would deny me access to the firm's resources for reasons still unknown.

**B. if the suspension of my resources were related to communications and confidential information provided by K&L to my ex-wife and her attorney sometime in 2018 without my knowledge or consent? K&L has never provided me with the financial records or communications. When requested to provide me with copies of the documents sent to him by K&L, my ex-wife's attorney, Michael Mueller, refused to provide.**

On Feb 11, 2019, at 5:12 PM, [redacted]> wrote:

I will take it under advisement.

, Esq.

On Mon, Feb 11, 2019, 3:34 PM Willie Dennis <woc2020@gmail.com wrote:

Mr. Mueller,

As requested will you please send me the e-mails sent you by my Firm?

Thank you.

In an evidentiary hearing in September 2022, the Court ruled that the information provided by K&L to my ex-wife and her attorney was not subject to attorney client privilege as my e-wife's attorney asserted. Moreover, John Bicks, the member of the Management Committee and Managing Partner of the New York office, John Bicks in his testimony stated to his knowledge K&L had never communicated with my ex-wife or her attorney (Cross Examination Testimony of the member of the Management Committee and Managing Partner of the New York office, John Bicks, on October 14, 2022, page 539 ). To date I have not received copies of those records.(4)

After discussing with my partners of over 15 years only business related issues, particularly with respect to Microsoft and then in response they contact your ex-wife and her attorney without your consent or knowledge in 2018 and the beginning of 2019.

**C. If the processes for my suspension or expulsion (the first in the 100 year history of K&L ) was conducted properly? As I have consistently stated it was flawed and I was not provided all the information considered nor was I given the opportunity to respond. (4)**

John Bicks' testimony about the process around my loss of resources on January 30, 2019 highlights that even the Managing Partner of the New York office was and remained unclear as to procedures governing the partnership agreement and how material actions having material adverse effects on partners should be conducted in a fair and just way.

Cross Examination Testimony of the member of the Management Committee and Managing Partner of the New York office, John Bicks on October 14, 2022, page 534.

**Question**

John, when Mr. Maletta told you that this was going to --that this suspension was coming a day or two beforehand , did you ask him what was the - who was authorizing it?

**Answer.**

I don't believe I asked him that.

**Question**

John, as general counsel of K&L does not have the authority to do this unilaterally, is that correct?

**Answer**

I don't know if that is correct or not correct. And I don't know that he decided it unilaterally, so I can't really answer your question.

**Question**

I didn't ask you --I said does he have the authority of his own --so your response is that under the partnership agreement, Mr. Maletta may have the authority to unilaterally suspend another partner in the firm?

**Answer**

I don't know that this is a matter that is governed, that the partnership agreement even speaks to or whether this a decision made by the management committee or endorsed by the management committee. **(4) (5)**

There can be no integrity in this proceeding unless I have complete rights of discovery because the Firm can shield its conduct behind documents in its exclusive possession and control, and the fact it does not have to answer questions at deposition.

For example, without Firm records I have to guess how decisions were made respecting my separation compensation and the bases for my termination which followed a process entirely unknown to the Firm before this.

Was this a decision made by the management committee or endorsed by the management committee? (4) (5)

What does Section 7 of the Partnership Agreement require regarding compensation from K&L within 90 days after the date of the improper expulsion?



Given the factual errors K&L had made to date I believe that it is reasonable to seek an independent review of what I am owed.

Having no access to my e-mails (those sent to and received from management of K&L on many of these issues ) on January 30, 2019 I had no access to critical information needed to defend myself when the "expulsion process" began 5 months later and in this action.

To not permit discovery on these issues and others puts me at an extreme disadvantage because I have no capacity to prove precisely what has been withheld from me. Moreover, as a result of the loss of access to my e-mails (those sent to and received from management of K&L on many of these issues ) on January 30, 2019 I had no access to critical information needed to defend myself when the "expulsion process" began 5 months later and in this action.

Based on the information set forth herein to not modify the Order would allow K&L to have an unjustified and unjust influence over the process.

The American Arbitration Mission Statement provides clear guidance on how these issues should be addressed:

"The AAA's official mission statement and vision statement are based on three core values: integrity, conflict management, and service. The AAA has long held its mediators and arbitrators to strict codes of ethics and model standards of conduct to ensure fairness and impartiality in conflict management"

Based on the information set forth herein, not to address the material factual error delivered to you by K&L would be to allow K&L to have an unjustified and unjust influence over the process and decision.

Respectfully submitted,

*/s/ Willie E. Dennis*

1. I ask you to note that this is the second time K&L has delivered to you materially and factually inaccurate information. The first being of course K&L assertion that I was foreclosed from pursuing my civil claims by the ruling in the criminal case. The Court left no doubt that K&L may not improperly use conditions of the criminal case to deny me the right to pursue this legal matter. Specifically, after K&L expressed the view that this arbitration is another potential avenue to harass and harm the very same Victims in this matter, the Court stated, **"Well he has the legal right to pursue his lawsuit."**
2. As you noted in your Order on the date of sentencing I was facing life threatening medical conditions and heavily medicated, so I did not hear the date of 2018. As you are aware less than 30 days after the sentencing date

I was hospitalized from March 2023 until February 2024, in Brooklyn Hospital, Mt. Sinai Hospital and Windsor Nursing Home, due to six major medical operations, including heart surgery, the placement of three stents in my left leg, two hernia surgeries and a failed attempt to remove the blockage in my right femoral artery. Moreover, I was also navigating the perilous delivery of health care services at MDC Brooklyn. Because of its condition, the Court has stopped sending individuals with medical conditions such as mine to MDC Brooklyn

https://www.zmolaw.com/news/justice-behind-bars-judge-furmans-call-to-action-against-mdc-brooklyns-nightmares/

https://www.yahoo.com/news/mdc-brooklyn-federal-jail-just-124500374.html

3. It is interesting to note that despite feeling threatened enough to hire personal security in 2019 neither Ms. Bostick nor the firm ever thought about going to the New York City Police Department or any other law enforcement agency to report such threats.

Cross Examination of Calvina Bostick, Partner in the New York office, pages 654-655

Question. Just to clarify, they [K&L] never suggested there should be any contact with any law enforcement agency by you with regard to your threats?

Answer

So I hired a lawyer when I felt threatened, so I got my legal advice from my lawyer.

**Question**

Thank you But I am talking, you are a partner at K&L, so I am really talking about the Firm itself. So there was no recommendation from them that you go to the New York City Police Department, for example?

**Answer**

No they never recommended --referred me to the New York police department

Question: So let me understand this right. You felt threatened, your felt like your life was in danger, and he [John Bicks, member of the Management Committee and Managing Partner of the New York office] directed you to work with Jeff Maletta who is in Washington, DC?

**Answer**

Yes.

It is also interesting to note that Mr. Bicks, while only recommending Ms. Bostick to work with a lawyer in Washington, DC, upgraded his security system and began sleeping with a loaded gun in his bed.

Direct Examination Testimony of member of the Management Committee and Managing Partner of the New York office, John Bicks, page 510.

> *We lived in our house in Ridgewood for 17 years, never turned on the alarm, and I started putting the alarm on every night. We had to upgrade the security system. I had to -- I make the decision to upgrade the security system to add cameras so we would be aware of what was going on when I was not there. I am not necessarily proud of saying it, but it's true, there were nights when Willie was being particularly active and after days when I would receive 10, 20, 30 text messages in a day, when I would sleep with a loaded gun next to my bed, not something I've ever done before.*

Despite feeling so threatened Ms. Bostick, stated that she hired security, however Ms. Bostick, an officer of the court never considered contacting the police or the Federal Bureau of Investigation. She stated in her testimony that it was only after her lawyer asked for consent in August 2020 to contact the Federal Bureau of Investigations on did conversations with the

Federal Bureau of Investigations begin (Cross Examination Testimony of Calvina Bostick, Partner in the New York office October 14, 2022 pages 655-656).

Despite feeling threatened and hiring personal security Ms. Bostick remained consistent in stating she never discussed this with the management of the Firm

Cross Examination of Calvina Bostick, Partner in the New York office, October 14, 2022 page 654).

**Question**

So after I was expelled from the Firm, did you talk about this to anyone in management?

Answer

I don't --I can't see why I would have. No, I don't believe so.

Please further note that during the testimony of all the Victims they each testified that although each of them was working with the Federal Bureau of Investigations at approximately the same time, (I) they never went directly to the Federal Bureau of Investigation, (ii) they never knew each had a matter before the Federal Bureau of Investigations, (iii) they never discussed their individual matters with each other and (iv ) they never sent me a single communication at any time informing me that they felt threatened or harassed. All of the Victims are in the New York office , a small office with less than 90 attorneys in the office at the time.

4. Please note that although the witness lists submitted to you by both K&L and myself on November 15, 2021 (one day prior to my arrest on November 16, 2021) contained overlapping witnesses, including the Chairman of K&L, Michael Cáccese and the General Managing Partner of K&L, James Segerdhal I was not permitted to obtain the testimony of any partners of K&L, other than the Victims. Mr Cáccese and Mr Segerdhal would have been able to answer the process questions relating to the reasons as to my loss of resources and expulsion from the Firm and communications with my ex-wife and her attorney. None of these actions could have been taken without the Chairman's or General Managing Partner's expressed approval.
5. Although Mr. Bicks did not have much knowledge of the process surrounding my suspension, he was certainly clear as what would happen to my clients as of January 30, 2019. They were to be consumed by K&L on January 30, 2019.

Cross Examination Testimony of the member of the Management Committee and Managing Partner of the New York office, John Bicks on October 14, 2022, page 539).

"We will make arrangements to monitor your inbox and will forward any client-related matters to the appropriate lawyers in the firm."

**Microsoft e-mail to the Chairman of K&L, Michael Cáccese, dated January 8, 2019**

**From:** Dennis, Willie E.
**Sent:** Tuesday, January 08, 2019 3:05 PM

**To:** Caccese, Michael S.
**Subject:** RE: Urgent-Internal Conflict Jim/Willie/Microsoft

Mike,

I also stated in my e-mail that I am in **"direct internal conflict"** with Jim.

I am going to prepare a more descriptive and document supported e-mail later, but the basic facts are as follows

For all of 2018 Jim refused to meet with (or allow anyone on the East Coast leadership team to meet with )my contact at Microsoft[redacted],) who had demonstrated his willingness to give us business on the East Coast by giving us business on the East Coast.: https://www.prnewswire.com/news-releases/american-center-for-mobility-state-of-michigan-celebrate-grand-opening-300624045.html, April 2018)

In reliance on a promise that Annette Becker and I made to Microsoft in August of 2017 (that it would have access to the entire platform ,[redacted] had one of his attorneys in DC train two of our attorneys, one who has since left the Firm and Carley Andrews. Annette would only allow those two attorneys to be trained despite the fact that [redacted] and a most of his team is located on the East Coast.

[redacted] "accepted" Annette's refusal to train anyone of the East Coast. When he also asked to meet with the leadership team on the East Coast he was denied repeatedly throughout the year.

Annette knows that the legal group at Microsoft really wanted this expansion of the relationship between our Firm and Microsoft to be successful. They communicated that to Annette on the campus.

**Jim's refusal to allow a meeting to take place between our leadership on the East Coast, costs me and the Firm material revenues for 2018 and 2019.**

**As a result, Jim and I are in direct conflict**. Moreover, Jim initiated and supervised all the research into the various issues I have noted.

I just realized this and need to give it more thought as to the implications.

For ease, I have attached e-mails to support all my statements above. Some of the e-mails are new.

Off to a client meeting now.

I hope to speak to Jeff tomorrow. Jeff has been involved since the middle of November and has received over 1000 pages of e-mails and documents since we have been working together. Jeff thoroughly understands my concerns because we have discussed them for almost two months now.. I hope our call shows some progress and does not result in requests for more e-mails or documents.

Willie

**Microsoft e-mail from the US Managing Partner of K&L, Michael Zanic, dated January 28, 2018**

From: Zanic, Michael
Sent: Sunday, January 28, 2018 7:36 AM
To: Dennis, Willie E.; Matlin, Robert S.; Cottle, Eric; Becker, Annette
Cc: Wahi, Pallavi Mehta; Ohlenforst, Cynthia; Jackson, Valerie A.; Bicks, John A.; Segerdahl, James
Subject: Microsoft/Bruce Jackson

FYI -- Bruce Jackson called me on Friday to introduce himself to me. He described it as a "head of US to head of US" call. We had a very nice chat where he stressed that he gave us/Willie a chance, that we impressed his team, and that more and more work will continue to flow. He also stressed how important diversity is to Microsoft and to him personally. He also said very nice things about Willie (which made me wonder whether he actually knew Willie), Rob and Eric.

I think that I said the correct things back in the correct ways, including affirming our commitment to diversity and to having diverse lawyers lead our teams and to be staff diverse lawyers on our teams.

Adding others who may be interested in this call.

Michael G. Zanic
Managing Partner - US
K&L LLP
K&L Center
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Phone: +1.412.355.6219
michael.zanic@klgates.com
www.klgates.com